ATCHISON, T. & S. F. RY. CO. v. BRYANT.

(Court of Civil Appeals of Texas. El Paso. June 26, 1913. On Rehearing, Dec. 18, 1913. Rehearing Denied Jan. 8, 1914.)

On Rehearing.

1. APPEAL AND ERROR (§ 743*) — QUESTIONS REVIEWABLE — ASSIGNMENTS OF ERROR — RULES OF COURT.

An assignment of error, though not conforming to Courts of Civil Appeals rule 25 (142 S. W. xii) providing that an assignment must refer to the part of the motion for new trial in which the error is complained of, must be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2999, 3011; Dec. Dig. § 743.*]

2. MASTER AND SERVANT (§ 224*)—INJURY TO SERVANT—LICENSEE.

Where a railroad company expressly authorized trainmen to ride on switch engines in going to and from their work, a brakeman attempting to board a switch engine to ride to his home after completing his run was not a mere licensee, and he did not act at his own risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 654; Dec. Dig. § 224.*]

3. MASTER AND SERVANT (§ 217*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

A brakeman, who knew of the existence and general location of a switch stand near a railroad track, but who did not know that it would not clear a man riding on the side of an engine or car on the track, and whose attention had never been directed to the proximity of the

stand to the track, was not, as a matter of law, chargeable with knowledge of the proximity, but the jury, in his action for injuries by being struck by the stand while attempting to board an engine, must determine whether he must necessarily have known of the dangerous proximity of the stand to the track.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

4. APPEAL AND ERROR (§ 742*)—QUESTIONS REVIEWABLE — ASSIGNMENTS OF ERROR — MULTIFARIOUSNESS.

Assignments submitted as propositions, and as such multifarious, will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

5. MASTER AND SERVANT (§ 217*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

Assumption of risk is not in all cases predicable from the employé's knowledge of the conditions alone; an appreciation of the danger, as well as knowledge, being an essential element.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

6. TRIAL (§ 296*)—INJURY TO SERVANT — INSTRUCTIONS—MISLEADING INSTRUCTIONS.

Where, in an action for injuries to a brakeman struck by a switch stand while attempting to mount a switch engine, the court charged that railroad companies were not insurers of the safety of their employés, and employés assumed the risks ordinarily incident to the business and the risks which were open and visible to observation, but it could be presumed that the company would exercise ordinary care to keep the track reasonably safe, a further instruction that, if the danger from the position of the switch stand was one of the ordinary risks of the employment, or the brakeman knew of the position of the stand, or in the ordinary discharge of his duties he must necessarily have acquired the knowledge and appreciated the danger therefrom, he assumed the risk, and there could be no recovery, was not objectionable as placing too great a burden on the company because requiring that the knowledge of the brakeman must have been acquired while actually engaged in the discharge of his duties.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 470; Dec. Dig. § 296.*]

7. TRIAL (§ 295*)—INSTRUCTIONS — CONSTRUCTION.

The instructions must be considered as a whole in determining their correctness.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 295.*]

8. MASTER AND SERVANT (§ 268*)—INJURY TO SERVANT—EVIDENCE—ADMISSIBILITY.

In an action for injury to a brakeman struck by a switch stand while mounting a switch engine to ride to his home after completing his run, evidence of a bulletin of the company, which recited that engines would pick up crews, was admissible on the issue of his right to board the engine.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 910; Dec. Dig. § 268.*]

9. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR — ERRONEOUS ADMISSION OF EVIDENCE.

Any error in admitting evidence to prove a fact established by other evidence admitted without objection is not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**10. APPEAL AND ERROR (§ 742*)—QUESTIONS REVIEWABLE — ASSIGNMENTS OF ERROR — MULTIFARIOUSNESS.**

The consideration on appeal of an assignment of error, which is submitted as a proposition which is multifarious, will be confined to the proposition subjoined thereto.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**11. TRIAL (§ 194*)—INSTRUCTIONS — WEIGHT OF EVIDENCE.**

An instruction consisting of abstract statements of the principles of law governing the case, and not affirmatively presenting to the jury the issues involved, is not objectionable as on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 194.*]

**12. EVIDENCE (§ 513*)—INJURY TO SERVANT—EVIDENCE—ADMISSIBILITY.**

In an action for injuries to a brakeman struck by a switch stand while mounting a switch engine, the testimony of an experienced railroad man that he knew at what distance a switch should be placed from the rail to be reasonably safe, and that everything should clear the line six feet so as to protect employés, was admissible on the issue of negligence in placing the stand too close to the track.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2317, 2318; Dec. Dig. § 513.*]

Appeal from District Court, El Paso County; Dan M. Jackson, Judge.

Action by J. C. Bryant against the Atchison, Topeka & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed, and motion for rehearing overruled.

Turney & Burges, of El Paso, and Terry, Cavin & Mills, Jno. G. Gregg, and A. H. Culwell, all of Galveston, for appellant. Patterson, Wallace & Gardner, of El Paso, for appellee.

HIGGINS, J. This suit was instituted by J. C. Bryant against the Atchison, Topeka & Santa Fé Railway Company for damages alleged to have been sustained by reason of personal injuries inflicted upon him while in the employment of said company. Upon trial before a jury, verdict was rendered in his favor assessing his damages in the sum of $5,000, and judgment was rendered accordingly.

Rule 25 for the government of the Courts of Civil Appeals, as amended January 24, 1912 (142 S. W. xii), provides that an assignment of error must refer to that portion of the motion for a new trial in which the error is complained of. Since none of the assignments herein comply with this provision of the rule, they will not be considered.

In opinion rendered upon rehearing in El Paso Electric Railway Co. v. Lee, 157 S. W. 748, recently filed and not yet officially reported, we at length state our reasons for declining to consider assignments of error which do not comply with that provision of amended rule 25, which requires the same to refer to that portion of the motion for a new trial in which the error is complained

of. We here now refer to this opinion as stating in full our reasons for declining to consider the assignments in this case.

Affirmed.

HARPER, C. J., did not sit in this case.

**On Rehearing.**

HIGGINS, J. [1] The action of the Supreme Court in granting a writ of error in El Paso Electric Railway Company v. Lee, 157 S. W. 748, indicates its disapproval of this court's holding that rule 25 (142 S. W. xii) requires that assignments of error shall refer to that portion of the motion for a new trial in which the error is complained of. It therefore becomes our duty to pass upon the assignments of error herein, which we originally declined to do, because of their failure to comply with the rule indicated. The nature and result of this suit, as stated in appellant's brief, and conceded by appellee to be substantially correct, is as follows: "This suit was instituted in the district court of El Paso county, Texas, by J. C. Bryant against the Atchison, Topeka & Santa Fé Railway Company, alleging that he was injured on or about the 23d day of October, 1911, in the yards of the defendant company at Albuquerque, New Mexico; that at that time he was employed as a brakeman by defendant, and that Albuquerque was the end of his run; that after delivering his train in the yards at Albuquerque on that day and after sending the engine to the roundhouse, plaintiff started to his home, and, on account of the distance and location of the roundhouse and yards of the defendant from the resident and business district of Albuquerque, plaintiff attempted to mount one of the defendant's switch engines for the purpose of riding thereon to Central avenue; that while he was in the act of mounting said engine and before he had reached a place of safety he was struck by a switch stand and caused to fall from said engine in such a manner that his foot was caught by the wheels of same, and that he was injured without any contributory negligence on his part. Plaintiff alleges that said switch stand was constructed and maintained too close to the track on which the switch engine was proceeding, and that same was negligence and the proximate cause of his injuries. Defendant answered by general denial and by pleas of contributory negligence and assumed risk, answering that plaintiff at the time of his injury was not engaged in any work for the defendant, and that he had no right to mount said moving engine, and that if he chose to do so that he did so at his own peril; that said switch stand was in the same position in which it had been for years; that the accident occurred in broad daylight; that when plaintiff attempted to mount said engine he was in full view of the switch stand, and that he

knew or should have known of the position of same, and that in attempting to mount said moving engine at the gangway he assumed the risk of striking said switch stand and of receiving the injuries which he suffered. By supplemental petition plaintiff alleged that he had a right upon said switch engine because defendant had issued a bulletin stating that switch engines would carry employés of the company to and from town and the Albuquerque yards. The cause was tried with a jury, and a verdict was rendered November 8, 1912, in favor of plaintiff, assessing his damages at $5,000."

Appellee testified that on October 23, 1911, he was in the employment of appellant in the capacity of brakeman, and immediately prior to the accident he had come into the Abajo yards of appellant at Albuquerque, N. M., with his train; that said yards are distant about a mile and a half or two miles from Albuquerque, and that the train men left their trains and got them in the yards; that he was living in Albuquerque on Central avenue, and on the occasion mentioned he had turned the switch at the roundhouse for his engine to go into the roundhouse, and then attempted to board a switch engine going in the direction of Central avenue, for the purpose of riding as far as possible towards his home. As he attempted to board the engine, he secured a hold with his right hand, but missed the grabiron with his left, and, before he could straighten up and get onto the engine, he was hit by a switch stand on his left hip, thrown from the engine and his right foot fell upon the rail, the engine running over and crushing same. It appears that the roundhouse near which appellee attempted to board the engine was distant about five blocks from Central avenue, to which latter point it was his purpose to ride upon the switch engine. The distance from the rail to the switch stand which struck him was 3 feet 8 inches, and only 17 inches from the target of the stand to the grabiron of the engine which he had attempted to board. He had been running into the Albuquerque and Abajo yards for about four years and four months prior to his injuries, and he was familiar with the usual and customary manner in which the trainmen residing in Albuquerque went to and from the Abajo yards; said employés going to and returning from such yards would ride switch engines and trains when it was convenient to do so, that is, they would ride same over the tracks to and from the yards whenever one was available for that purpose. If an engine or train was not passing at the time, they would walk and go over the switches and tracks in the yards. He had ridden in the presence of the yardmaster and had never been forbidden to so ride. The employés operating the switch engines never made any objections to such parties riding on such engines, and he had never heard of

any. Sometimes they would stop and sometimes slow down for them. He knew that there was a switch stand at the point where he was injured, and, if it had been changed in years, he knew nothing of it. The accident happened in the daytime. The engine which he was attempting to board was backing towards Central avenue. The roundhouse was five blocks from Central avenue, and he attempted to board the engine near the viaduct, four blocks from said avenue. The engine of the train upon which he had come in from his run went into the roundhouse, where he had gotten off of same, and he then had over four blocks to go, and if the switch engine had gone entirely all of his way, he would have saved walking three and a half or four blocks from the viaduct, where he had attempted to board same. That when he attempted to board the switch engine, the fact that he missed the grabiron with one of his hands caused him to swing outward, but he was back and ready to catch the grabiron, and would have secured it if it hadn't been that he was knocked off by the switch. He was in the process of straightening up and getting back when he struck the stand; that the switch which he turned to direct his road engine into the roundhouse was a block nearer town than the roundhouse, and when he had turned this switch his part of his trip was done, and he was through with that day's work and he then started home; that, in attempting to board the engine, he did not figure on the switch stand. He did not know it was as close to the rail as it was. He knew the switch stand was there, but didn't know it was jammed up against the track. He had walked by it before, but had never had occasion to use it. He had gotten on switch engines before near that same place, and had probably mounted a switch engine within 50 feet of the switch stand prior to that date; that he did not see the switch stand. There was nothing between him and the switch stand. When he first started to run to the engine to the point where it was passed, he did not know whether the switch stand was plainly in his view or not, but he believed the way was clear. He did not know whether the switch was too close to clear him or not. He had never thrown the switch or used it, and had never seen any one throw it, and had never had his attention called to the switch by any one, and, at the time he met with the accident, he did not know that the switch would not clear a man riding on the side of an engine or car. The engine which he attempted to board was of a very small type, other engines being broader than that one; that he attempted to board the gangway of the engine; the gangway is between the engine and the tender.

Frank Mulhern, an experienced railroad man and former employé of defendant in its yards at Albuquerque, testified as follows:

"From my experience as a railroad man I know at what distance a switch should be placed from the rail, to be reasonably safe; everything should clear the main line six feet; this is necessary, so as to make protection for the people who are working around on the cars, and things of that kind. * * * I was familiar, during the time I ran into the Albuquerque yards, with the method and way in which the conductors and brakemen got to and from the Abajo yards; I know how they handled me, and I could see how the others went. It is some distance from Albuquerque, where we slept and ate, to the yards, and if a switch engine or road train was passing, they would naturally slack up and pick you up, so you would not have to walk two or three miles; this was habitually done while I was there; it was in my case. I have seen them pick up others; they would naturally pick up everybody else, the same as me. If an engine was passing, it would slow down, and I would get on."

C. W. Fineron, a former employé of defendant, and an experienced railroad man, in substance testified: That in order to make a switch reasonably safe it should be placed at such a distance from the track or rail so that a man standing on the side of an engine or car would clear and not be struck by the switch; that witness worked in the yards at Albuquerque from 1905 to 1910 as switchman and yardmaster; that, during the time he was employed it was usual and customary, in going to and returning from the Abajo yards and roundhouse and between the roundhouse and Central avenue, for the brakeman and conductor to ride on the switch engines; that he was familiar with the switch placed where plaintiff met with his accident, and that the same was too close and would not clear a man standing on the side of a car or engine. That he was also familiar with the bulletins issued by the Santa Fé, with reference to business in the yards at Albuquerque. That during the time he was employed there was a bulletin issued, posted, and in force, authorizing the switch crews and engineers on switch engines to carry the brakeman and conductors and permit the conductors and brakemen to ride between Central avenue and the roundhouse and Central avenue and the Abajo yards when going to or returning from their work; that this bulletin was issued in 1909, and was in force during all the time he worked for the defendant; that when a bulletin is issued it remains in force until repealed by some other bulletin; that no other bulletin was ever issued repealing this bulletin while he was in the employ of the defendant.

H. R. McLain, another experienced railroad man and former employé of defendant, testified: That he was familiar with the rules, regulations, and bulletin of defendant at Albuquerque; that in 1909 and 1910 the defendant had a bulletin posted in its offices at Albuquerque, which authorized the brakemen and conductors in going to and returning from their work between Central avenue and the roundhouse and Abajo yards to ride on switch engines, and which bulletin directed the switching crew to permit its employés to so ride. That it was customary for all the brakemen and conductors to ride on the switch engines in going to and returning from their work, and that they rode and were permitted to ride by reason of said bulletin. That no bulletin was issued annulling this bulletin. That the cause of the bulletin being put up there was because several trains had been delayed—one thing and another had delayed the men in getting down there.

H. A. Taylor, an employé of the defendant up until April 22, 1911, testified that the usual and customary way for brakemen and conductors to go to and return from the yards was to ride an engine.

C. H. Morris, in the employment of the defendant, running into Albuquerque from 1902 to 1909, as a locomotive engineer, testified in substance: That he was familiar with the customary manner and way in which defendant operated its business at Albuquerque; that, during the time he was employed and ran into the yards at Albuquerque, it was customary for defendant's brakemen and other employés to ride on switch engines in going to and returning from the city of Albuquerque to the roundhouse and the Abajo yards; that there was a bulletin in force at that time authorizing them to ride, and that he had personally read the bulletin.

[2] The first assignment complains of the refusal of a peremptory instruction in favor of the appellant, it being contended that "an employé of a railway company who attempts to ride upon a train of such company, unless in the discharge of his duties, even with the consent of such company, is only a licensee, and must accept the tracks over which he rides in the condition in which he finds them." We cannot assent to the broad proposition here asserted. Under certain circumstances, a tacit consent only to certain employés to ride upon trains while not in the discharge of any duty would constitute them mere licensees, as was held in the Spivey Case, 97 Tex. 143, 76 S. W. 748; but the bulletin, which expressly authorized trainmen to ride in going to and from the Abajo yards and the city of Albuquerque and intermediate points, placed the appellee upon a higher plane than that of a mere licensee. Lovett v. Ry. Co., 97 Tex. 436, 79 S. W. 514; Chattanooga, etc., v. Venable, 105 Tenn. 460, 58 S. W. 861, 51 L. R. A. 886. In the Lovett Case, supra, it was held that a railroad company owed to the employé of an independent contractor, permitted to ride on its gravel train between his home and the gravel pit where he labored, the duty of ordinary care to guard against injury. The existence of

the bulletin in this case radically distinguishes it from the Spivey Case, and this is especially true in view of the testimony of McLain, substantially to the effect that it was adopted to expedite the passage of employés to and from their homes, so as to prevent delay to trains. Such testimony shows it was to the company's interest that such employés should ride in going to and from their homes, and, in so riding, the employés were acting in the interest of the company, as well as for their own convenience. However, we do not base our view upon this fact alone, but rather upon the broad ground that an employé lawfully and expressly authorized to ride upon an engine or train to and from his place of employment is thereby placed upon a distinctly higher plane than a mere licensee, who must accept the engines, trains, and tracks as he finds them. The contention is therefore overruled that appellee was a mere licensee, and in attempting to board the switch engine, did so at his own risk.

[3] In the first assignment, it is further contended that: "In an action for personal injuries, a plaintiff is presumed to have assumed all risks of which he had actual knowledge, and of which he must necessarily have acquired knowledge, and, where the only allegation of negligence is the placing and maintaining of a switch stand in close proximity to one of defendant railway company's tracks, plaintiff cannot recover where the undisputed evidence shows that he had had knowledge of the existence of such switch stand for years, and that the accident occurred in broad daylight, when the plaintiff was in full view of the switch stand."

It is true the evidence shows appellee had known of the existence of the switch stand for a long time; that the accident happened in broad daylight, and when he was in full view of the stand. But, in the performance of his duties as a brakeman, he had never had occasion to use the switch, and he testified he did not know it was as close to the rail as it was, and did not know it would not clear a man riding on the side of an engine or car. We cannot say that mere knowledge of the existence and general location of the switch stand would have necessarily carried with it knowledge of the fact that it was closer to the rail than it should have been, and would not clear parties on the side of an engine. His attention may not have ever been directed to the proximity of the stand to the rail, although he might frequently have seen the same; and therefore it was for the jury to determine whether or not he must necessarily have known of the dangerous proximity of the stand to the rail. It cannot be said from the evidence that he was charged with this knowledge, as a matter of law.

[4] Assignments two, seven, and eight are submitted as propositions. As such, they are multifarious and will not be considered.

[5] Error is assigned to the tenth paragraph of the court's charge which reads: "If you find from the evidence that the danger arising from the position of said switch stand, if any, was one of the ordinary risks of plaintiff's employment, as a brakeman running into Albuquerque, or the plaintiff knew of the position and location of said switch stand, or in the ordinary discharge of his duties he must necessarily have acquired the knowledge and appreciated the danger therefrom, or should have appreciated the danger therefrom, then, and in that event, he would have assumed the risk of any danger from being struck by said switch stand, and, if you believe the facts to so be, your verdict should be for the defendant."

It is first contended that, plaintiff being an experienced railroad man and having known of the location of the switch stand for a long time, he was charged, as a matter of law, with knowledge of the danger resulting from the proximity of the stand to the track. This contention must be overruled for two reasons: First. As above shown, while plaintiff knew of the location of the switch stand, yet it cannot be said, as a matter of law, that he had necessarily acquired knowledge of its proximity to the rail, and the consequent danger to parties attempting to board an engine while passing the stand. Second. Assumption of risk is not in all instances predicable from knowledge of the conditions alone. Discussing this question, Mr. Labatt, in the first edition of his work on Master and Servant, vol. 1, at § 279a, p. 668, says: "Any charge which may lead the jury to suppose that the defense of assumption of risks is available to the master if the servant was aware merely of the existence of certain abnormal conditions is a misdirection." Again, at section 279b, p. 670: "The practical importance of the principle stated in the last section is considerably diminished by a fact which is sufficiently obvious, viz., that circumstances which would justify a jury in finding that a servant, although aware of the abnormal conditions, did not comprehend the risks resulting therefrom, are of much more rare occurrence than circumstances in which his comprehension of the risk is an unavoidable inference as soon as it is established that he knew of the abnormal conditions. In the majority of instances therefore, it will be found that the courts treat the servant's assumption of the risk as an immediate consequence of his knowledge of the conditions of which that risk was an incident. The rationale of these decisions is not that proof of the servant's comprehension of the risk is unnecessary, but simply that, upon the facts in evidence, any person of average intelligence who was aware of the conditions must either have understood, or have been chargeable with negligence in not understanding, the hazards to which these conditions exposed him. *But, although one step of the deductive*

*process is thus taken without the aid of any specific testimony, there is a manifest impropriety in giving an abstract statement of the rule as to assumption of risks in terms which ignore the circumstance that this step must be accounted for.*" Therefore, while it may not be improper under certain circumstances for the court to assume appreciation of danger, and submit to the jury the issue only of a knowledge of the condition, yet a charge should not be criticised which recognizes as an essential element in the doctrine of assumed risk an appreciation of the danger, as well as knowledge of the abnormal conditions. As stated by Mr. Labatt, however, the matter is of but little practical importance, where appreciation of the danger is an unavoidable inference as soon as knowledge of the condition be established.

[6] It is further contended that, while an employé assumes all the risk of which he has actual knowledge and of which he must necessarily have acquired knowledge, yet the charge in question placed too great a burden on the defendant, in that it required the knowledge of appellee must have been acquired by him while actually engaged in the discharge of his duties. The construction placed upon this isolated paragraph of the court's charge is strained, and it is not believed the jury were lead to believe or could have believed therefrom that, in order for plaintiff to have assumed the risk, his knowledge and appreciation of the danger must have been acquired when in the discharge of his duties as a brakeman only, but they would have placed a reasonable construction upon it, and would have found that he assumed the risk if he had knowledge of the defective condition and consequent danger, or must necessarily have acquired the same, regardless of whether such knowledge was acquired in the discharge of his duties as a brakeman or otherwise. This matter is relieved of doubt by the fourth paragraph of the court's charge, which reads: "You are instructed that railroad companies are not to be regarded as insurers of the safety of their employés, and that, when one enters the employment of a railway company, he assumes all the risks that are ordinarily incident to the business in which he is engaged and the risks and dangers which are open and visible to his observation, as well as the risks and dangers of which he knew, or, in the ordinary discharge of his duties must necessarily have acquired the knowledge, but he may presume that the company will exercise ordinary care to keep the railroad track and right of way along which its engines and trains are operated reasonably safe and free from obstructions as may endanger its employés while in the exercise of ordinary care for their own safety and attempting to mount an engine for the purpose of rightfully riding thereon to some other point and place in the yard."

[7] The charge must be construed as a whole, and, construing the tenth paragraph in connection with the fourth paragraph, the jury must have understood that appellee assumed all the risks and dangers which were open and visible to his observation, whether he acquired same in the discharge of his duties or otherwise. The refusal of a special requested charge is the basis of the fourth assignment. It was properly refused for reasons indicated in overruling the second contention under the first assignment and the second contention under the third assignment. The charge assumes that the plaintiff knew of the proximity of the stand to the rail and the consequent danger, which, for the reasons indicated, is not proper.

[8, 9] The fifth assignment complains of the admission of testimony of H. R. McLain that there was a bulletin with reference to brakemen riding on engines, which stated that any engine going to or coming from the Abajo yards would pick up any member of the crew, and which was objected to for irrelevancy and immateriality. It was relevant and material upon the issue of appellee's right to board the passing switch engine. Furthermore, other witnesses testified to the same facts without objection.

[10] The sixth assignment is submitted as a proposition, but, as such, is multifarious, and consideration will be confined to the proposition subjoined thereto. This proposition is that, under the evidence, appellee was nothing more than a licensee, and, as such, could not complain of the location of permanent fixtures along the right of way or the location and position of the tracks and switches. This contention is disposed of, by what has been heretofore said.

[11] The ninth assignment complains of a portion of the fifth paragraph of the court's charge as being upon the weight of the evidence in assuming two disputed questions at issue, viz., whether plaintiff was an employé at the time and place of his injury, and was rightfully attempting to mount one of appellant's engines. The court, in the portion objected to, nowhere assumes any fact. It merely consists of abstract statements of the principles of law governing in the case, and is not an affirmative presentation to the jury of the issues involved. The further contention made in the proposition subjoined to this assignment is disposed of by what has heretofore been said.

[12] The testimony of Frank Mulhern, the admission of which is the basis of the tenth assignment, was relevant and material upon the issue of negligence in placing the switch stand too close to the rail. The further contention made in the proposition subjoined to this assignment, with reference to appellee's alleged status as a licensee, is disposed of by what has heretofore been said.

The motion for rehearing is overruled.