ARCHIE BROWER, PETITIONER-PROSECUTOR, v. THE TOWNSHIP OF FRANKLIN ET AL., RESPONDENTS-DEFENDANTS.

Argued January 19, 1938—Decided February 17, 1938.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Theodore Strong & Son* (*Russell Fleming,* of counsel).

For the defendant, *Clarkson A. Cranmer.*

418

The opinion of the court was delivered by

PERSKIE, J. This is a workmen's compensation case. The question requiring decision is whether petitioner is entitled, by virtue of 2 *Rev. Stat.* (1937) 34:15-74 (source, chapter 172, *Pamph. L.* 1931, *p.* 382), to compensation for injuries which he received while in the performance of services as a member of a volunteer fire company which had been formed pursuant to 1 *Rev. Stat.* (1937) 15:8-1 (source, chapter CLXXVI, *Pamph. L.* 1876, *p.* 286). We do not think so.

Petitioner was a member and secretary of the Franklin Fire Company No. 1, which is a volunteer fire company. He received no compensation from this company, but earned his livelihood as an employe of the Calco Chemical Company of Franklin township. On August 3d, 1936, he was injured while driving a fire engine to a fire in that township. The township only, appears to have filed an answer. It should be observed that there is nothing to indicate the disposition made of petitioner's claim against the fire company. No point, however, is made on this score.

While the proofs disclose a reference by the petitioner to the alleged existence of an oral agreement between the township and the fire company for the rendition of fire protection, which agreement was supposedly made prior to petitioner's affiliation with the fire company, yet there is not a scintilla of legal proof in support of the existence of such an agreement. Petitioner, in fact, admits that his reference thereto was based on clear hearsay. There is, however, plenary proof to support the finding, and we so find, that there was no contract between the fire company, or petitioner, and respondent, creating the relationship of employer and employe between them. Nor is there any proof from which it may be properly inferred that respondent exercised, or had the right to exercise, control, supervision or regulation of either the fire company or petitioner. There is proof that respondent, at the end of each year, contributed, by way of gift, to petitioner's fire company—as it did to other companies in varying amounts—the sum of $100. See 2 *Rev. Stat., supra,* 40:47-27 (source, chapter 245, *Pamph. L.* 1933, *p.* 668).

The workmen's compensation bureau found that petitioner was an employe of Franklin township under the pertinent provisions of 2 *Rev. Stat., supra,* 34:15-43 (chapter 355, *Pamph. L.* 1931, *p.* 873) ; that the accident arose out of and in the course of that employment; and that petitioner was entitled to compensation based upon his weekly wage in his private employment, in accordance with 2 *Rev. Stat., supra,* 34:15-75 (chapter 172, *Pamph. L.* 1931, *p.* 382, § 2).

Respondent appealed to the Somerset County Court of Common Pleas. That court determined, *inter alia,* that 2 *Rev. Stat., supra,* 34:15-74 (chapter 172, *Pamph. L.* 1931, *p.* 382, § 1), requiring that "the governing body of every municipality * * * provide compensation insurance for volunteer firemen * * *" applied only to firemen belonging to those companies formed under 2 *Rev. Stat., supra,* 40:149-10, 11 (chapter 61, *Pamph. L.* 1897, *p.* 137), and not to companies formed, as was petitioner's, under 1 *Rev. Stat., supra,* 15:8-1 (chapter CLXXVI, *Pamph. L.* 1876, *p.* 286).

Accordingly, the judgment of the bureau was reversed, and the petition for compensation was dismissed. This court granted *certiorari.*

In considering and determining the issue here involved, we must bear in mind certain settled and basic principles. 1. A necessary prerequisite for recovery under the Workmen's Compensation act is the existence of the relation of employer-employe. *Corbett* v. *Starrett Bros., Inc. (Court of Errors and Appeals),* 105 *N. J. L.* 228; 143 *Atl. Rep.* 352; *Rojeski* v. *Pennington Dairy Farms, Inc.,* 118 *N. J. L.* 335; 192 *Atl. Rep.* 746. 2. In order for that relation to exist, there must be a valid contract of service together with the right or power in the employer to control the employe with respect to the transaction out of which the injury arose. *Essbee Amusement Corp.* v. *Greenhaus,* 114 *N. J. L.* 492, 493; 117 *Atl. Rep.* 562; *Rojeski* v. *Pennington Dairy Farms, Inc., supra* (at *p.* 337).

Upon these principles, we revert to the statutes under which volunteer fire companies are created in order to determine whether there is any basis for the distinction made by

the learned judge below. We learn that there are several classes of volunteer fire companies. The first class, into which falls the petitioner's company, is formed under 1 *Rev. Stat.,* *supra,* 15 :8-1, 8 (chapter CLXXVI, *Pamph. L.* 1876, *p.* 286). Companies in this class are, by the act creating them, composed of any number of persons not less than ten. There is no requirement in the act that all or any of such persons be residents of the municipality or township wherein they intend to serve as firemen. Such companies are formed by posting a notice of a meeting for the purpose of incorporation, the notice stating the object of the meeting. At the meeting, the corporate name is chosen, and this name, together with a certificate of incorporation, is filed in the office of the clerk of the county where the association exists. 1 *Rev. Stat.,* *supra,* 15 :8-1. Fire companies so formed may hold, purchase and convey real estate for corporate purposes; and "any such volunteer fire company doing active duty in any city shall be entitled to all the privileges and immunities of any other company in the department of said city any law to the contrary notwithstanding." 1 *Rev. Stat., supra,* 15 :8-2. These companies may provide for the appointment of certain of its members to perform police duties at fires, and the appointees "shall have full power and authority" to act as fire police anywhere in the county in which they are appointed, and to arrest those who refuse to obey their orders. 1 *Rev. Stat.,* *supra,* 15 :8-4. Petitioner concedes that the municipality has no control over such companies.

The second class or type of volunteer fire companies is formed under an act (2 *Rev. Stat., supra,* 40 :149-10, 15 ; chapter 61, *Pamph. L.* 1897, *p.* 137), which is materially different from the act under which companies of the "first class" were formed. In the first place, companies of the "second class" must be formed by residents of the township. 2 *Rev. Stat.,* *supra,* 40 :149-10. And, secondly, these companies do not spring into existence by their own volition as do companies of the "first class." For, the residents who seek to set up a volunteer fire company of the "second class" type must make an application to, and receive the consent of, the township wherein they reside, to organize. 2 *Rev. Stat., supra,*

40:149-10. Thirdly, and this is an even more pertinent distinction between the two types of companies, the township wherein companies of the "second class" are organized, may adopt rules and regulations respecting such companies. 2 *Rev. Stat., supra,* 40:149-15. It is, therefore, apparent that volunteer fire companies of the "second class" are under the control of the township they serve. (For a third class of volunteer fire companies which is not here involved, see 1 *Rev. Stat., supra,* 15:8-3 (chapter 73, *Pamph. L.* 1929, p. 115).

That being so we turn to 2 *Rev. Stat., supra,* 34:15-74 (chapter 172, *Pamph. L.* 1931, § 1), which provides as follows:

"34:15-74. Volunteer Firemen to be Insured. The governing body of every municipality, and the committee of every fire district shall provide compensation insurance for volunteer firemen."

It may well be that this provision is applicable to those volunteer fire companies under municipal control. But does this act require municipalities to provide insurance for firemen belonging to companies such as petitioner's? In view of the general principles already stated, and in view of the fact that municipalities have no control over such companies, either with respect to their organization or regulation, we think not. So far as the act creating them is concerned, any number of such companies might be organized in one township. There are no qualifications for the physical fitness of the firemen. No consent of the governing body is necessary, and the township has no authority to impose any penalty for dereliction of duty, or any other regulation. Under circumstances such as these, the legislative mandate does not lend itself to the interpretation that it imposes upon a municipality the burden of providing insurance for firemen who are not answerable to it. Such an interpretation would be an unreasonable one. Nor do we think that the provision of the act, under which petitioner's company was incorporated, providing equal privileges and immunities to those enjoyed by any other company in the department of the municipality (1 *Rev. Stat., supra,* 15:8-2) is of any avail to petitioner. For, in so far

as is made to appear upon the record, there are no other companies in the fire department of Franklin township. And, in our opinion the fact that the township gives petitioner's company $100 per annum does not give the township control over, or create any contract of service with, petitioner's company. The $100 is a mere gratuity. And it appears to us that this contribution rises no higher than would a legal contribution to further the humane activities of such necessary, wholesome and worthwhile agencies as for example the American Red Cross, the Salvation Army, &c. Neither can we spell out of this gratuity an implied contract, creating a master and servant relationship, which might enure to the benefit of petitioner or to his company.

An historical analysis, moreover, of our Workmen's Compensation act lends further support to the conclusion that volunteer firemen belonging to companies in the case of petitioner's company are not entitled to compensation.

The original Workmen's Compensation act (chapter 95, *Pamph. L.* 1911, *pp.* 134 *et seq.*) contained no specific mention of volunteer fire companies. They were clearly not subject to its provisions. In 1913 (chapter 145, *Pamph. L.* 1913, *p.* 230, § 1) the original act of 1911 was supplemented so as to bring municipal and other public employes within its purview. No specific mention was made of volunteer fire companies. They were still not included within the act. It was not until 1927 (chapter 127, *Pamph. L.* 1927, *p.* 239) that volunteer firemen were specifically mentioned. The act of 1927, *supra,* which was amendatory of the act of 1913, *supra,* included among those entitled to compensation "each and every active volunteer fireman doing public fire duty *under the control or supervision of* any commission, council, or any other governing body of any municipality * * *." (Italics supplied.) This provision is found in the recent revision of our statutes where, in 2 *Rev. Stat., supra,* 34:15-43, the aforementioned acts of 1913 and 1927 are combined into one section. Thus, while prior to the act of 1927, *supra,* no volunteer firemen could receive compensation, subsequent to that act, volunteer firemen who, even though not compensated for their services, were *under municipal control and supervision,*

became entitled to reap the benefits of the Workmen's Compensation act.

The next step in the legislation upon this subject appeared in 1928. Chapter 163, *Pamph. L.* 1928, *p.* 325. This act, generally stated, authorized and empowered municipalities to provide compensation insurance for volunteer firemen. Coming as it did, immediately after the act of 1927, *supra,* it is apparent that the law of 1928 referred only to those volunteer firemen under control and supervision of the municipality, because this was, at that time, the only type of volunteer fireman who was entitled to compensation under the act, and consequently the only type for whose injury the municipality was liable. It was, therefore, the only type of volunteer fire company for which the municipality required the protection afforded by insurance. It is interesting to observe, moreover, that this act of 1928, *supra,* is not included within the Revised Statutes of 1937, and consequently is no longer a part of the public law of this state. (See the act adopting revised statutes, chapter 188, *Pamph. L.* 1937, § 1). The act of 1928, *supra,* appears to have been superseded by 2 *Rev. Stat., supra,* 34:15-74 (chapter 172, *Pamph. L.* 1931, *p.* 382), which was the next development in the legislation upon this subject. This act is, in substance, similar to the act of 1928, *supra,* except that it directs municipalities to provide insurance for volunteer firemen, whereas the act of 1928, *supra,* merely authorizes and empowers municipalities to do so. In view, therefore, of its legislative history, we think that the act of 1931, *supra,* just as the act of 1928, *supra,* refers only to those volunteer firemen who, by the previous act of 1927, were already entitled to compensation.

We are, moreover, in construing legislation, obliged to assume that the legislature was thoroughly conversant with its own legislation, and with the construction placed thereon by our courts. From that premise flows the impelling conclusion that if the legislature intended to give all volunteer firemen, irrespective of municipal control and supervision, the benefits of our Workmen's Compensation act, it would have said so. It legislated to the contrary. For while it is true, as already observed, that under 2 *Rev. Stat., supra,*

34:15-74 (section 1, chapter 172, *Pamph. L.* 1931), every municipality is authorized and required to provide compensation insurance for volunteer firemen (note—not *all* volunteer firemen), yet it is also true that under 2 *Rev. Stat., supra,* 34:15-75, 76 (sections 2, 3, chapter 172, *Pamph. L.* 1931), it is provided that the payment of compensation to *any* volunteer fireman shall be governed by the provisions of the Workmen's Compensation act. Notwithstanding the aforesaid legislation, one week after the passage of 2 *Rev. Stat., supra,* 34:15-74, 75, 76 (chapter 172, *Pamph. L.* 1931, §§ 1, 2, 3), the legislature enacted 2 *Rev. Stat., supra,* 34:15-43 (chapter 355, *Pamph. L.* 1931, p. 873). That 2 *Rev. Slat., supra,* 34:15-74, 75, 76 (chapter 172, *Pamph. L.* 1931), is not, as urged, all inclusive, is apparent from the very provisions of 2 *Rev. Slat., supra,* 34:15-43 (chapter 355, *Pamph. L.* 1931, p. 873). The last stated act, which is the final legislation upon this subject, provides "every employe * * * and also each and every active volunteer fireman doing public fire duty *under the control or supervision of any* * * * municipality * * * who may hereafter be injured in the line of duty * * *" shall be entitled to compensation. If the legislature meant 2 *Rev. Slat., supra,* 34:15-74 (chapter 172, *Pamph. L.* 1931), to be all inclusive, obviously there would have been no necessity to have limited the application of 2 *Rev. Stat., supra,* 34:15-43 (chapter 355, *Pamph. L.* 1931), only to those firemen under municipal control and supervision.

It therefore seems clear to us that by the addition of the clause as to volunteer firemen "who may hereafter be injured in the line of duty" to the already existing requirement that such firemen be "under the control and supervision of—[the] municipality" (2 *Rev. Stat., supra,* 34:15-43; chapter 355, *Pamph. L.* 1931, p. 873), the legislature merely specified and clarified the class of volunteer firemen actually entitled to workmen's compensation, and that volunteer fire companies of the class of petitioner's were not entitled to such compensation. We so hold.

Accordingly, the writ of *certiorari* is dismissed and the judgment of the Somerset County Court of Common Pleas is affirmed, with costs.

Mr. Justice Heher dissents.