LORETTA VAN NESS, PETITIONER-DEFENDANT, v. BOROUGH OF HALEDON, RESPONDENT-PROSECUTOR.

Submitted October 1, 1946—Decided February 18, 1947.

Before Justices PARKER, DONGES and EASTWOOD.

For the petitioner-defendant, *Marcus & Levy* (*Isadore Rosenbloom,* of counsel).

For the respondent-prosecutor, *William A. Davenport* (*Robert E. Kiernan,* of counsel).

The opinion of the court was delivered by

EASTWOOD, J.   This is a workmen's compensation case. The respondent-prosecutor, Borough of Haledon, seeks by writ of *certiorari* allowed, to review a judgment of the Passaic County Common Pleas Court which affirmed the determination of the Workmen's Compenastion Bureau making an award in favor of the petitioner-defendant, Loretta Van Ness, the widow of Charles Van Ness, deceased, and her two minor children Frank Van Ness and Donald Van Ness.   There is no dispute as to the amount of the award and the sole question requiring judicial determination is that of liability on the part of the Borough of Haledon.

A review of the factual minutiæ may not be amiss.   It appears that petitioner-defendant's husband, Charles Van

Ness, was at the time of his death on July 10th, 1944, a "police marshal" of the Borough of Haledon, having been appointed as such on January 1st, 1944. The pertinent ordinance in force relating to the police department of the Borough of Haledon provides as follows:

"The Council of the Borough of Haledon hereby ordains that a Police Department be and hereby is established in this Borough consisting of a Chief of Police and such policemen and marshals as shall hereinafter be appointed." Section I, Ordinance 81.

"The compensation of the members of the department shall be determined by the Council. The marshals shall be paid only for such time as they shall be engaged in actual duty assignment of the Mayor, Police Committee or Chief of Police." Section 13 of Ordinance 81.

"All orders and assignments for any member of the Police Department from the Mayor or Police Committee shall be made to and through the Chief of Police." Section 14 of Ordinance 81.

On the night in question, July 10th, 1944, the decedent, police marshal, Charles Van Ness, was in attendance at a police court hearing in the Borough of North Haledon for the purpose of testifying in a motor vehicle case. A reciprocal arrangement was in effect whereby the policemen of the Boroughs of Haledon, North Haledon, and Prospect Park, responded to one another's calls when the radio car of a particular borough could not be reached, or as is said in police parlance, "Out of call." A radio call that an accident had occurred at the Vigliano home in North Haledon Borough was received by regular patrolman Romanelli, who at the time was on duty operating radio car No. 44 of the Borough of Haledon. The radio call in question was directed to car No. 47 of North Haledon Borough. Romanelli, knowing that the North Haledon Borough radio car was "Out of call," that Captain Stutz, chief of police of North Haledon, was also in attendance at the police court where decedent, Van Ness was present, and not knowing the location of the Vigliano home where the accident had occurred, drove to the police headquarters of North Haledon Borough to inform

Chief of Police Stutz of said call. By coincidence, Chief
Stutz came out of the police headquarters at the same time
that officer Romanelli arrived, and stated that he had already
received the message over the telephone, and that "We are
on our way now." Stutz was followed by two North Haledon
Borough councilmen, and all three got into the North Hale-
don police car and proceeded to the Vigliano home. Roma-
nelli apparently did not get out of his car. The decedent,
Charles Van Ness, in civilian clothes, got into Romanelli's
car without any invitation or request from Romanelli. Ro-
manelli, in turn, followed the automobile occupied by Chief
Stutz and eventually arrived at the Vigliano home where it
developed that a woman had fallen down a flight of stairs
and had sustained what appeared to be serious injuries. Stutz
and Romanelli took charge of the situation. Van Ness, accord-
ing to the testimony of these witnesses, was not observed to
have done anything except to stand by. It was determined
between Romanelli and Stutz that the injured woman was
in immediate need of hospital care and that an ambulance
should be procured. Stutz then proceeded by radio to request
Haledon Borough headquarters to send over the ambulance
of the Haledon emergency ambulance corps, but was informed
that Haledon Borough headquarters was unable to contact the
emergency ambulance corps. The ambulance in question was
one operated by a private charitable organization for the use
of the residents of Haledon Borough and adjacent communi-
ties. The decedent, Van Ness, without request or direction
from either Chief Stutz or officer Romanelli, then got into
the Haledon Borough radio car alone and went after the
ambulance in question. Officer Romanelli testified that he
was not aware that Van Ness had taken his car until he was
so informed by Captain Stutz. Van Ness drove Romanelli's
radio car at top speed to the place where he had learned that
the members of the emergency ambulance corps were meet-
ing. It was testified by independent witnesses that they heard
the siren of the police car which Van Ness was driving, that
its red flicker light was seen blinking and that the car itself
was observed going at a fast rate of speed, that it made a
turn on two wheels, mounted a driveway, and pulled up

abruptly at the ambulance headquarters. David Brown, chief of the Ambulance Corps, testified that he left the meeting place to ascertain the cause of the commotion, that he asked Van Ness. "What's up?" that he observed Van Ness in what he termed, "An awfully excited" condition, stating that Van Ness was hollering, "Dave, Dave, get the ambulance right away, right away, North Haledon, North Haledon, Saw Mill Road, Saw Mill Road, a lady, a lady," and continuing, "Follow me, follow me." Van Ness then turned the police car around so that it faced in the opposite direction. Brown summoned help, backed the ambulance out of the garage, pulled behind the police car occupied by Van Ness and stopped. The car driven by Van Ness had stopped after proceeding approximately twenty-five to thirty-five feet. Brown blew his horn lightly and finding that there was no response from the police car, got out and found the decedent Van Ness, slumped over the steering wheel, working his hands, and muttering, "Woman, woman, woman." Brown then got Van Ness out of the police car, laid him on a stretcher, put him back in the ambulance and rushed him to St. Joseph's Hospital. Van Ness never regained consciousness and died approximately ten minutes after arrival at the hospital, from what has been diagnosed as coronary occlusion induced by extreme emotional strain, excitement and anxiety.

Prosecutor sets up as grounds for reversal four principal reasons: (1) There was no employer-employee relationship at the time of the alleged accident and death; (2) there is no legal proof of injury by accident; (3) there is no competent legal proof of any causal relationship; and (4) that the petitioner-defendant had failed to sustain the burden of proving that the relationship of employer-employee existed between petitioner-defendant's decedent, Charles Van Ness, and the Borough of Haledon, at the time of the alleged accident and that his death arose out of and in the course of his employment with the Borough of Haledon within the meaning of the New Jersey Workmen's Compensation Act.

Directing our attention to grounds (1) and (4) above, it will be perceived, *in limine*, that the question of employer-employee relationship must be based upon either the express

provisions of the ordinance of the Borough of Haledon previously referred to or such acts of the municipality ratifying the action of Marshal Van Ness under the circumstances in question or similar conduct in the past tending to vest authority so to act in like or similar circumstances. *Campbell* v. *Hackensack,* 115 *N. J. L.* 209; 178 *Atl. Rep.* 794. Ordinance 81 of the Borough of Haledon under the authority of which Van Ness was appointed a police marshal is specific as to the times when and the occasions upon which a police marshal shall be called upon to perform duties as a member of the Haledon Borough police department, viz.: "Actual duty assignment of the Mayor, Police Committee, or Chief of Police." (Section 13.) It cannot be disputed that on the night of Van Ness' death he had not at any time been assigned to perform any police duty within the specific authorization of the applicable ordinance. It was testified by Delos Willis, chief of police of Haledon Borough, that he (Willis) knew nothing concerning the circumstances leading up to and concerning Van Ness' death until approximately forty-five minutes after the death had occurred. Our review of the testimony does not leave us with a conclusion that there was any necessity for Van Ness to have performed any police duty under the circumstances. The entire affair was being competently handled by Chief Stutz of the North Haledon Borough police department and officer Romanelli of Haledon Borough. We do not perceive any request or authorization at any time by anyone during the occurrence for Van Ness to perform any service or duty. All of Van Ness' acts on the night in question appeared to have been on his own volition. Officer Romanelli had no knowledge of Van Ness' taking the Haledon Borough police car until after Van Ness had driven off in the car to locate the ambulance. In view of the specific provisions of the regulatory ordinance as to the mode and manner by which assignments to police duty are to be made, we conclude that there was no legally established relationship of employer-employee between the decedent Van Ness and the Borough of Haledon. To hold that such relationship was brought into existence and established by reason of the voluntary acts of Van Ness on the night in question, would be to

enlarge the authority and responsibility set forth in the ordinance without legal justification. Some testimony was proffered by the petitioner-defendant that it was the custom of a police marshal who chanced to be at police headquarters, even though not assigned to police duty, to accompany police officers regularly assigned to duty at the time, and thereby assist such regularly assigned officer or officers in the performance of some regular or emergent duty. The proofs are barren that this practice was ever called to the attention of the governing body of Haledon Borough or that such practice was ever acquiesced in or approved by it. It cannot be successfully contended that liability on the part of the municipality may be established by an unapproved or unratified custom which violates the specific terms of an ordinance regulating the nature and conditions of employment. In so far as the evidence discloses it does not appear that Van Ness was paid for his services on the night in question or that any bill was ever submitted to the Borough of Haledon for such services. The petitioner-defendant has, therefore, failed to bring her case within the rule set forth in *Campbell* v. *Hackensack, supra.*

In order to establish the relationship of employer-employee it was incumbent upon the petitioner-defendant to establish such relationship by the evidence. *Rojeski* v. *Pennington Dairy Farms, Inc.,* 118 *N. J. L.* 335; 192 *Atl. Rep.* 746; *Brower* v. *Franklin Township et al.,* 119 *N. J. L.* 417; 197 *Atl. Rep.* 367; *Essbee Amusement Corp.* v. *Greenhaus,* 114 *N. J. L.* 492; 177 *Atl. Rep.* 562; *Corbett* v. *Starrett Bros., Inc.,* 105 *N. J. L.* 228; 143 *Atl. Rep.* 352. This she has failed to do. Petitioner-defendant having failed to establish by the evidence that the relationship of employer-employee existed at the time of the incident of July 10th, 1944, it is not necessary for us to consider the grounds for reversal Nos. (2) and (3).

The judgment under review is reversed, but, without costs.