TRANSIT   CO.   *v.*   VENABLE.

*(Knoxville.*   October   13,   1900.)

1. NEGLIGENCE.   *Presumed from injury to passenger by collision.*

From proof of the fact of injury to a passenger by collision of trains, the law, without more, presumes negligence on the part of the carrier.   (*Post, pp. 467, 468.*)

2. COMMON CARRIER.   *Servant of, treated as passenger, when.*

A servant having nothing to do with operation of trains, but performing service at a station—*e. g.*, that of night watchman and gatekeeper—who is permitted by the carrier to travel to and from his place of service on its trains, without payment of fare, is not a trespasser, but a passenger, while thus on its trains.   (*Post, pp. 468, 469.*)

3. SAME.   *Same.*

And such servant is not deprived of his character of passenger, and converted into a trespasser, while thus riding on his master's trains, by the fact that he was riding without pass or payment of fare, in violation of a well-known and reasonable rule and regulation of the carrier company, it appearing that he was riding openly in a passenger coach, with the knowledge of the company's servant, in this case a conductor, in charge of the train.   Until such servant resists or refuses to comply with the reasonable demand of the company's servant in charge of the train to pay fare or to leave the train, he is not a trespasser, but remains a passenger.   (*Post, pp. 462–467.*)

Cases cited: Washburn *v.* Railroad, 3 Head, 638; Railroad *v.* Hailey, 94 Tenn., 383.

4. SAME.   *Same.*

The presence of such servant on the train, with the knowledge of the conductor or other person in charge of the train, with-

out any demand made of him on the occasion to pay fare or leave the train, entitles him to the character of a passenger. (*Post, p. 467.*)

FROM HAMILTON..

Appeal in error from Circuit Court of Hamilton County. FLOYD ESTILL, J.

PRITCHARD & SIZER for Transit Co.

W. T. MURRAY for Venable.

BEARD, J. The defendant in error, at the time of the injury he complains of in this action, was in the service of the plaintiff in error. His chief duty was that of night watchman at the company's depot in Chattanooga; coupled with this, however, during his watch he was required to stand at the gate which shut off the railroad tracks from the station and examine the tickets of parties seeking, and direct them to, its trains. On account of a slight injury previously received he had laid off from service for a few days. About eight and one-half o'clock of the morning of the day of the accident in question in this case, he boarded one of the trains of the plaintiff in error at a point near his home, a short distance outside of Chattanooga, to ride to the station or depot of his employer, to report his read-

iness to return to duty the coming night. Just before reaching his destination the train on which he was riding had a head-end collision with a train of the Chattanooga, Rome & Southern Railway Co., which, under a contract with the plaintiff in error had the right to use its tracks at intervals. The injury for which the defendant sues resulted from this collision.

Both companies were defendants in this action, and there was a verdict against both. A new trial was granted the Chattanooga, Rome & Southern Railway Co. and disallowed as to the Chattanooga Rapid Transit Co., and the case is before us on its appeal in error.

The declaration alleged negligence on the part of the two railway companies, but there was no evidence to sustain the averment. The case was rested, by the plaintiff below, on the proof of the accident, the resulting injurry and a presumption of negligence arising from the accident.

The chief controversy in the case was as to the status of the defendant in error at the time of the accident, or, rather, as to the relation he then sustained to the plaintiff in error. The insistence of the Rapid Transit Co. was that Venable was an employee of the company riding on one of its trains in full knowledge of the fact that he was violating one of its rules, which forbade any one to ride without the payment of fare or a pass from a superior officer, and in

doing so he was a trespasser, to whom no duty was owed save not to inflict upon him wanton injury; on the other hand, the contention of the defendent in error was that he was a passenger, entitled to all the protection which the law attaches to the passenger relation.

On this point the testimony of the plaintiff below was that ever since his employment by the company he had ridden on its trains to and from his work without a pass or the payment of fare, and his right to do so had never been questioned by any of the conductors or other officers of the company, and that he had never heard of any rule requiring an employee to exhibit a pass or pay fare in order to ride. On the other hand, the conductor of the train testified there was a rule of the company posted in conspicuous places, by which conductors were forbidden to permit parties to ride without a pass or the payment of fare, save employees of the company going to or returning from their work, and that he had called the attention of Venable to this rule more than once, and had said to him on such occasions that he must either pay his fare or get a pass. He admitted, however, he had never enforced this rule against him or any other employee of the company, and that on the morning of the accident, and a little while before it occurred, he saw Venable on the train, but did not demand fare from him.

On the point raised by this testimony of the conductor, the trial Judge said to the jury that "if the plaintiff had been notified that he would not be allowed to ride on its train by virtue of his position as an employee of the road and had been notified that he could not ride on its trains without a pass or the payment of fare, and he was undertaking to ride at the time he claims to have been injured, without a pass or the payment of fare, and if there is nothing in the evidence to show he was on the train by the consent or permission of the conductor, he would not be entitled to recover." Again putting his view of the law on this subject, so as to save all misapprehension on the part of the jury, he says: "If the proof shows that the plaintiff was on the defendent's—Rapid Transit Co.'s—train with the knowledge or by the consent of the conductor, then he occupied the position of a stranger, and not that of an employee to the defendant company and it would owe him the same duty that a common carrier owes a passenger for hire. . . . And if he was on the train under that state of facts and the proof shows there was a head-end collision . . . the law would presume that there was negligence on the part of the defendant, the Rapid Transit Co., and your verdict should be for the plaintiff, provided he was injured."

It is insisted that there is error in this charge

of the Court. A railroad company, beyond question, has the right to make and enforce reasonable rules for the control of its trains and persons thereon, not only to provide for the security of its passengers and employees (*Railroad* v. *Wilson,* 88 Tenn., 306) but to protect itself from imposition and wrong (1 Ell. on Railroads, Sec. 199), and such rules cannot be abrogated by subordinate employees. 4 Ell. on Railroads, Sec. 1500. In recognition of this unquestioned right upon the part of the company, and the lack of power of the subordinate to wilfully abrogate such a rule, in *Railroad* v. *Hailey,* 94 Tenn., 383, it was held that a party who is injured while traveling on a freight train was not entitled to recover where he induced a conductor to violate a known rule of the railroad company which forbade the taking of passengers on a freight train without a permit from the superintendent. If, therefore, the instruction of the trial Judge is to be taken as announcing a contrary view, it would undoubtedly be error. But we do not so understand it. It must be considered, and was no doubt so understood by the jury, in the light of the evidence of the case relied on by the defendant company. As has been seen from the testimony of the conductor, he had never exacted fare from Venable on any occasion when traveling on his train. The most he had ever done was to call his attention to the rule, and then permit him

21 P—30

to travel unmolested. He had at no time put defendant in error to the alternative of paying his fare or getting off, as he had no pass, nor did he the morning of the accident. Before it happened he saw Venable riding in his train, yet he did not approach him. He not only did not ask him for fare, but he makes no pretense of a purpose on his part to do so. The presumption is that everyone, not an employee in the service of the company in running the train, and traveling openly in the coaches upon a passenger train is a passenger, and if riding with the knowledge of the conductor, and without interference from him, that he has been accepted by the company as such. 4 Ell. on Railroads, Sec. 1578, and cases cited in notes. The fact that he is riding without the payment of fare makes him none the less the stranger or passenger. *Washburn* v. *N. & C. R. R.,* 3 Head, 638. And it is evident that such a person cannot be converted into a trespasser until he resists or refuses to comply with the reasonable demand of him who is in charge of the train to pay his fare. That person is the conductor. He is the *alter ego* of the master, clothed with authority to control the train, and, among other things, to determine who shall or shall not be carried on it. He also for himself decides when he will demand fare, requiring a party either to pay it or leave the train. As said in *Washburn* v. *N. & C. R. R.,*

supra, the conductor is the officer intrusted by the company "with the duty of excluding all persons not lawfully entitled to be on the train." The case at bar, according to the testimony most favorable for the company, is that of a party traveling on a passenger train under the eyes of the conductor, and who knows that under the rule his duty is to pay fare or furnish a pass, but who is not called upon to do either up to the time of the accident, and it is to this case that this instruction was directed. We think, in such a case, the railroad company cannot be exonerated from responsibility to such a party who suffers injury as a consequence of its negligence or want of care. On the contrary, his presence on the train by the permission of the conductor, to be implied from his knowledge that the party was there, and his neglect to enforce the company's rule by requiring fare or a pass, made such person a passenger, and entitled him to the highest degree of care for his safety. *Jacobs* v. *St. Paul & C. Railway Co.,* 20 Minn., 125 (S. C., 18 A. R., 360); *O'Donnell* v. *Alleghany Valley R. R. Co.,* 59 Pa. St., 239; *Washburn* v. *N. C. & St. L. Ry. Co.,* supra.

Being a passenger, the rule is that negligence was to be presumed from evidence of the collision. 4 Ell. on Railroad, Sec. 1635, and cases cited in notes. Applying the instruction to the facts of the case and in the light of the au-

thorities, we think there was no error committed
by the trial Judge in this regard.

It is next assigned for error that the trial
Judge declined two special requests, as follows:
"If he (the plaintiff) was riding on his own
business, but according to the custom of employ-
ees as alleged in the declaration, no presumption
of negligence would arise from the mere fact of
a collision." And again, "If the facts alleged in
the declaration were all true, it would not be
such a case of the carriage of a passenger as
would authorize you to infer or presume negli-
gence from the mere fact of collision."

The averments of the declaration to which these
two requests were directed were as follows: "The
plaintiff (at the time of the injury) was a pas-
senger upon one of defendant's—the Chattanooga
Rapid Transit Company's—trains from Sherman
Heights to Chattanooga, the plaintiff being a serv-
ant . . . of the defendant, but not on its said
train, and not in the line of his duty at the
time; his post of duty being at the station of
the company in Chattanooga . . . He (plain-
tiff) lived in Sherman Heights, and it was the
custom and habit of the company to carry him
home after his work was finished upon its train,
and back to his work," etc.

We think there was no error in declining these
requests. If the declaration had averred that
plaintiff was at the time of the injury riding to

his work at its station from his home by the courtesy or kindness of the company, without the payment of fare, there is no doubt the averment would have been good. Then, what difference can it make in the respective rights and liabilities of the parties, that this kindness or courtesy of the company has ripened into habit or custom? Having no connection with the service of the train, and, as is implied from the averment, riding upon it for his own convenience and according to a custom, Venable was a passenger, and the law, on proof of his injury, would infer negligence from the collision which occasioned it.

The weight of authority and of sound policy, we think, is that where a servant performs all his work at a fixed place, and the master, either by custom or as a gratuity, carries him to and from his work, the servant doing no service for the master on the train, he is to be treated as a passenger. *McDonald* v. *Railroad Co.*, 59 Ind., 246; *Fitzpatrick* v. *New Albany & S. R. R. Co.*, 7 Ind., 435; *Doyle* v. *Railroad Co.*, 166 Miss. (S. C., 25 L. R. A., 157); *McNulty* v. *Penn. Railroad Co.*, 38 L. R. A., 376; *N. J., L. E. & W. R. R. Co.* v. *Burns*, 51 N. J. L., 340; *State, use Abell*, v. *Western Md. R. Co.*, 63 Md., 433.

Finding no error in the action of the Court below, the judgment is affirmed.