ESSBEE AMUSEMENT CORPORATION, PROSECUTOR, v. MAMIE GREENHAUS, RESPONDENT.

Submitted October term, 1934—Decided March 18, 1935.

Before Justices HEHER and PERSKIE.

For the prosecutor, *Edwin Jos. O'Brien.*

For the respondent, *Hudspelh & Harris.*

The opinion of the court was delivered by

PERSKIE, J. By concession of each party, the real and only issue in this case is whether Morris Greenhaus, deceased, was or was not employed by the prosecutor at the

time of the accident resulting in his death. Did the statutory relationship of employer and employe exist between the parties? The bureau held that it did not; the Court of Common Pleas of Hudson County held that it did. Which is correct?

Under subdivision (c) of paragraph 23, section 3, general provisions, of our Workmen's Compensation act (*Pamph. L.* 1919, *ch.* 93, *p.* 211), it is provided:

"(c) *Employer* is declared to be synonymous with master, and includes natural persons, partnerships, and corporations; *employe is synonymous with servant* and includes all natural persons who perform service for another for financial consideration, exclusive of casual employments, which shall be defined, if in connection with the employer's business, as employment the *occasion* for which arises by chance or is purely accidental; or if not in connection with any business of the employer, as employment not regular, periodic or recurring." (Italics ours).

To constitute one an employe it is essential that there shall be a contract of service. Honnold on Workmen's Compensation, chapter 51, page 176 (1918 ed). The test by which to determine whether one person is another's employe, within the rule making the employer liable for injuries resulting from the negligence of this employe, is whether the alleged employer possesses the power to control the other person in respect to the transaction out of which the injury arose. *Ibid. ch.* 49, *pp.* 167, 168. See 20 *C. J.* 1241.

The prosecutor is a corporation. How could it be bound?

In the case of *Erie Railroad Co.* v. *S. J. Groves & Sons Co.,* 114 *N. J. L.* 216; 176 *Atl. Rep.* 377, the writer of this opinion for the Court of Errors and Appeals restated the law applicable as follows:

"It was incumbent upon the plaintiff to show that the contract upon which suit was brought was the contract of the defendant. To bind the defendant the contract must be proven to have been the act of the defendant either by corporate action, the act of an authorized agent, or by adop-

tion and ratification. *Beach* v. *Palisade Realty and Amusement Co.*, 86 *N. J. L.* 238.

"A corporation is bound by the act of an officer or agent only to the extent that the power to do the act has been conferred upon such officer or agent expressly by the charter, by-laws or corporate action of its stockholders or board of directors, or can be implied from the power expressly conferred, or which are incidental thereto, or where the act is within the apparent powers which the corporation has caused those with whom its officers or agents have dealt to believe it has conferred upon them." *Aerial League of America* v. *Aircraft Corp.*, 97 *N. J. L.* 530, 532; 117 *Atl. Rep.* 704, 705, and the cases therein cited.

"The rule is that the principal is bound by the acts of his agent within the apparent authority which he knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. The question in every case depending upon the apparent authority of the agent is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question; and when, as here, the party, relying upon such apparent authority, presents evidence which would justify a finding in his favor, he is entitled to have the question submitted to the jury. *J. Wiss & Sons* v. *H. G. Vogel Co.*, 86 *N. J. L.* 618; *American Well Works* v. *Royal Indemnity Co.*, 109 *Id.* 104, 108; *Burlew* v. *Brockway Motor Truck Corp.*, *Ibid.* 567, 569."

It is uncontroverted that the officers of the prosecutor never made arrangement with the decedent as to either his term of employment, or his wage or salary. In fact they did not know that he was on the premises.

Do the facts that the contract of employment was indefinite as to term and uncertain as to amount of salary or wage, operate to defeat the relationship of employer and employe? We do not think so.

In the case of *Willis* v. *Wyllys Corp.*, 98 *N. J. L.* 180, 181, the Court of Errors and Appeals, by Mr. Justice Parker, said:

"There is a great diversity of view in the different jurisdictions respecting this class of cases. The 'English view,' so called, tends to a construction establishing a contract for a definite term if this can be spelled out of the language used. The 'American view,' favored by most of the states, tends toward a holding that the hiring is at will unless the contrary be fairly plain. 26 *Cyc.* 973, *et seq.*; *Willis Con.*, § 39. Our own cases seem to favor the English view." Compare *Donnellan* v. *Halsey*, 114 *N. J. L.* 175; 176 *Atl. Rep.* 176.

And, in the case of *Colloty* v. *Schuman*, 76 *N. J. L.* 502, the Court of Errors and Appeals, by Chief Justice Gummere, said the rendition of service by one person to another at the latter's request, and under circumstances which negative the idea that it is gratuitous, entitles the person who renders the service to compensation therefor from the person at whose request it is rendered, notwithstanding the absence of an express promise on the part of the latter to pay for it. A promise to pay what the service is reasonably worth is implied from the request to render it. See, also, *Robinson* v. *Lincoln Trust Co.*, 95 *Id.* 445.

Moreover, there is proof in the instant case that decedent was to be paid the usual beginner's salary of $25 a week as a helper.

Do the facts and circumstances and the legitimate inferences to be drawn therefrom, *i. e.*, all the proofs, in the instant case support the judgment based thereon by the Common Pleas Court? *Geizel* v. *Regina Co.*, 96 *N. J. L.* 31, 33; *affirmed*, 97 *Id.* 331; *Kauffeld* v. *G. F. Pfund & Sons, Ibid.* 335; 116 *Atl. Rep.* 487.

Let us analyse these facts (section 11, *Certiorari* act, 1 *Comp. Stat.* (1709-1910), *pp.* 402, 405); *Hercules Powder Co.* v. *Nieratko*, 113 *N. J. L.* 195; *affirmed*, 114 *Id.* 254.

On November 13th, 1930, at about five-thirty P. M., decedent was in the booth with one, Charles Panzer, who operated

the machines in the moving picture theatre, known as the Rivoli, in Hoboken, New Jersey, and conducted by the prosecutor. It is claimed that he was there as a hired helper to Panzer; and that the latter employed him for the prosecutor at the direction and authority of Mr. Savage, its president, who had charge of the hiring of its employes. It appears that Panzer had been complaining to Mr. Savage that he found it very difficult to do all the work incident to the operation of the machines. He was finally told by Mr. Savage the day before the fire "to bring him (referring to Greenhaus) over." Panzer is corroborated by others in that testimony; and pursuant thereto he did bring him over; he worked as a helper to Panzer and that is corroborated. That while both were in the booth working an explosion occurred, followed by a fire; both Greenhaus and Panzer were severely burned and Greenhaus died as a result thereof the following day. That on the day of the fire and on the day the decedent was sent to St. Mary Hospital of Hoboken, Adolph Mendel, the treasurer of the prosecutor, filed or caused to be filled out, the hospital admittance card indicating that the decedent sustained the injuries while in the service of prosecutor and authorized the hospital to treat him for the prosecutor.

John J. Gilday, chief of the fire department, identified Mr. Savage as the person whom he interviewed after the fire as the one who testified as follows: "*Q.* Yes. *A.* After I wrote the records, after the fire, that both men were burned pretty bad and taken to the hospital, I sent for the owner to find out if there were any delinquencies. I had reports from my own men what they found in the booth, and I wanted to get information from him. He told me that the young man came down all aflame, and— *Q.* (interposing) Which young fellow? *A.* The young fellow that died. He told me that his mother was a cousin of his, and that the boy was after coming out of the navy, *and had nothing, and was giving him a job.*" (Italics ours).

It is true that Panzer made contradictory statements— orally and in writing; that civil suit was brought by the

attorney for respondent against prosecutor as a result of this accident, and that Savage and others denied the fact that decedent was employed by it or that it authorized Panzer to so employ him.

But our study of all the facts and circumstances and all the legitimate inferences to be drawn therefrom, *i. e.*, all the proofs in the case, leads us to the conclusion that they fully justify the findings by the Common Pleas Court that the decedent was an employe of the prosecutor at the time of the accident and which accident resulted in his death.

The writ is dismissed, with costs.