MARY ROJESKI, PROSECUTRIX, v. PENNINGTON DAIRY
FARMS, INCORPORATED, RESPONDENT.

Argued May 4, 1937—Decided June 28, 1937.

Before Justices BODINE, HEHER and PERSKIE.

For the respondent, *Henry Grossman* and *Felix Rospond*.

For the prosecutrix, *Cox & Walburg* and *Arthur F. Mead*.

The opinion of the court was delivered by

PERSKIE, J.   In this workmen's compensation case we are called upon to determine the usual basic questions; did the relation of employer and employe exist at the time of the accident for which compensation is sought, and, if the answer to that question be in the affirmative, did the accident arise out of and in the course of the employment?

The facts are rather unusual. Frank Rojeski, husband of the prosecutrix, and petitioner below, was, together with several other men, employed by respondent dairy concern as a farm hand. Board, lodging and other facilities were furnished these men by respondent as the result of arrangements made between the latter and the wife of one of its employes. Being dissatisfied with the food served, the men complained to respondent. As a result thereof it arranged with Rojeski and his wife that the latter should take charge of the farm house and tend to the men. More specifically, her duties consisted of "taking care of the house;" "cooking meals;" "fixing the beds." She "cooked and cleaned up the house and [did the] washing and everything;" she helped awake the men early in the morning to milk the cows; she bought the food which she supplied the men. For this service it was agreed that Rojeski was to receive, in addition to his regular monthly pay, $20 a month for his own board and care and that respondent was to pay $20 a month (plus a house, wood and two or three quarts of milk a day) for each farm hand cared for by the wife.

Accordingly prosecutrix moved from her home and family in Trenton to the farm house designated by respondent and performed her part of her undertaking. There is no complaint on that score. While so employed she was directed to move from the farm house first assigned to her to one of the other farm houses on the premises, and while cleaning and repairing this last house for occupancy and service in accordance with her original agreements with respondent, she fell and suffered injuries for which she seeks compensation.

In the bureau, the deputy commissioner determined: "I find that the respondent did give certain orders to the petitioner [prosecutrix], and had her do certain things which would indicate that she was not acting in an entirely independent manner of any supervision." Accordingly compensation was allowed.

In the Mercer County Court of Common Pleas, the judge held that the prosecutrix was not an employe, her "services being rendered more in the nature of those of an independent

contractor, or in aiding her husband." The judgment of the bureau was reversed. This court granted a writ of *certiorari*.

We are told that there is no precedent in this state for like facts or circumstances. That may be so. But that circumstance in itself is of no particular significance. For, while it is true that the particular facts and circumstances of this type of case are alone determinative of the rights and liabilities of the respective parties, yet the fundamental principles upon which those rights and liabilities are determined are firmly imbedded in our jurisprudence. They are so comprehensive that they embrace all facts and circumstances which justify the determination that the relation of employer and employe, within the purview of the act, existed at the time of the accident. What are some of these applicable, deeply rooted and firmly imbedded principles? It is well settled that to constitute the relation of employer and employe there must first be a valid contract of service. In addition, it must appear that the person to be charged as employer must have the power to control his employe with respect to the transaction out of which the injury arose. *Esbee Amusement Corp.* v. *Greenhaus,* 114 *N. J. L.* 492, 493; 177 *Atl. Rep.* 562; *Honnold on Workmen's Compensation,* 167, 168. Do the proofs bring the prosecutrix within these principles? We think they do.

*First:* As we have seen, there was a conference between prosecutrix, her husband and respondent, prior to the time when prosecutrix commenced her work. Terms and salary were discussed for the work to be done by both the husband and wife; their respective duties were made certain; the duties of each were separate and independent. A valid and binding contract of service was effected. The necessary relation of employer and employe was established. *Corbett* v. *Starrett Bros., Inc.,* 105 *N. J. L.* 228; 143 *Atl. Rep.* 352. Prosecutrix assumed and fulfilled her undertaking without complaint. Nor does it matter, as it is contended, that payment was made to the husband rather than to the wife directly for her services. In the first place, the manner of payment, although not controlling, is to be considered. And secondly,

it is clear that the payment, *extra* the regular monthly salary of the husband, was for the services rendered by the wife to the respondent pursuant to their mutual agreement. Otherwise stated, the husband's regular monthly compensation was for agreed services rendered by him to respondent separately and independently of the agreed services rendered by the wife to respondent. As a matter of fact, the husband had been employed by respondent for some time prior to the contract of service here last effected.

*Second:* Did the respondent have the power, in the legal sense, to control prosecutrix with respect to the incident out of which the accident arose? Is this necessary prerequisite present? We think so. The right to terminate her employment at any time vested in the respondent. As a matter of fact, a previous person who did the work which was undertaken and done by prosecutrix had been discharged because the farm hands had complained to respondent's manager as to the type of food served them. It appears, moreover, that respondent, apparently as part consideration for the services rendered by the farm hands in its employ, had agreed to board, lodge, and care for them. Thus it discharged its assumed obligations towards its farm hands through the prosecutrix, who actually performed the services. These services were performed on the property belonging to and unquestionably under respondent's control. The type of work done by prosecutrix had every normal earmark of the work of a servant rather than that of an independent contractor. Although the manner and the amount of payment for the services rendered are not controlling they do shed light on the existence *vel non* of an employer-employe relation. In the absence of an agreement to the contrary, servants are usually paid by the hour, day, week or month. And unless there is an agreement to pay an independent contractor in a like manner, he is not usually so paid. The difference between the status of each class carries with it, generally speaking, a difference in manner of payment for their respective labors. The amount paid prosecutrix for her services sheds further light. The calculations in the bureau indicate that the $60 received by her for

her services, exclusive of her own board, lodging, wood and milk supplied, when reduced to a weekly basis, yield $3.50 a week with which she supplied food for each one of the laborers. Nor was her work merely in aid of the labors of her husband. There is no suggestion that either her husband, or the other farm hands, were obliged to do the work she did. It is true that respondent did not tell her what type of food to buy nor how to serve it. But it is not altogether clear that it did not have the right to do so. For failure to serve food agreeable to the farm hands might well have proven just as fatal to her as it did to her predecessor. The time came when respondent desired to change the men from one house to another on the premises. Prosecutrix was advised of the fact. She and the wife of respondent's manager cleaned up the second house. Such control over prosecutrix tends further to support the relationship of employer and employe; of master and servant. The bureau was right; prosecutrix was a servant and not an independent contractor.

*Third:* Did the accident arise out of and in the course of the employment? We think so. Prosecutrix, as already indicated, was injured as a result of slipping on a cellar step while cleaning up the second house. Respondent, however, contends that the accident did not arise out of and in the course of the employment, and in support of that contention urges the holding in the case of *Van Devander* v. *West Side M. E. Church,* 10 *N. J. Mis. R.* 793; 160 *Atl. Rep.* 763. In that case, which in our opinion is clearly distinguishable, a minister was injured while removing ashes from the cellar of his parsonage. The court held that the minister was, at the time of the accident, engaged in performing an act personal to himself and his family, and not connected with his employment as a minister. Here prosecutrix was not performing an act personal to herself or her family; she was performing an act directed to be performed by her employer, her master. The employer was merely exercising his power of control over the prosecutrix, with relation to the incident out of which the accident arose. *Cf. Toner* v. *International, &c., Atlantic City,* 113 *N. J. L.* 29; 172 *Atl. Rep.* 389; *Essex County*

*Country Club* v. *Chapman,* 113 *N. J. L.* 182; 173 *Atl. Rep.* 591.

*Fourth:* The bureau is, of course, obliged to make a specific finding and determination of the facts. The quoted portion of the conclusion of the bureau is subject to the criticism that it does not contain a specific finding of the facts upon which the conclusion is based. The record should perhaps be remanded to the bureau to the end that it make the required finding. *Patton* v. *American Oil Co.,* 13 *N. J. Mis. R.* 825; 181 *Atl. Rep.* 651; *affirmed,* 116 *N. J. L.* 382; 185 *All. Rep.* 35. *Cf. Streng's Piece Dye Works* v. *Galasso,* 118 *N. J. L.* 257, 258; 191 *Atl. Rep.* 874. In view, however, of the fact that the result of our independent study of the proofs leads us to the same conclusion reached in the bureau, we see no point in so doing.

We have considered the other points argued and find them to be without merit.

The judgment of the Pleas is reversed, and the judgment of the bureau is affirmed, with costs.