22 So.2d 834

BLAIR et al. v. GREENE.

3 Div. 410.

Supreme Court of Alabama.

April 12, 1945.

Rehearing Denied June 30, 1945.

Sadler & Sadler, of Birmingham, and Fred S. Ball, Jr., of Montgomery, for appellants.

Steiner, Crum & Weil and Thos. B. Hill, Jr., and Wm. Inge Hill, all of Montgomery, for appellee.

LIVINGSTON, Justice (dissenting).

For the decision of the Court on procedural matter involved in this case, see 246 Ala. 28, 18 So.2d 688.

On the Merits.

The suit is under the homicide statute, section 123, Title 7, Code of 1940, brought by Brownie Brunell Greene, as administratrix of the estate of her deceased husband, Claris F. Greene, against Algernon Blair and F. G. Charlton, Sr., for the death of her said husband, caused by the negligence of defendants. Plaintiff had judgment in the court below, and defendants appealed.

For the purposes of this appeal, the negligence of Charlton, the driver of the automobile or station wagon in which Greene, the deceased, was riding when injured, was sufficient to take the case to the jury.

The principal questions for review on this appeal relate to the status of Charlton and Greene at the time Greene was injured. The questions are:

(1) Is the claim for the death of Greene, as against Blair, compensable only under the Alabama Workmen's Compensation Law, section 253 et seq., Title 26, Code of 1940?

(2) Was Greene a passenger of the defendants for hire, or was he a guest within the meaning of the guest law of this State, section 95, Title 36, Code of 1940?

(3) Was Charlton acting within the line or scope of his employment at the time Greene was injured?

(4) Were Greene and Charlton fellow servants on the occasion of the accident?

The undisputed testimony given by witnesses, both for the plaintiff and the defendants, relating to the foregoing questions, established the following facts.

The appellant Algernon Blair was under contract with the United States Government for the construction of a large holding and reconsignment depot located on the outskirts of Montgomery, and some three or four miles distant from the down town section of the city. The construction job was a war emergency measure and the Government wanted the work completed as soon as possible. The appellant F. G. Charlton, Sr., was Blair's chief engineer in charge of a crew of men consisting of helpers, rodmen, linemen, etc., numbering from six to fourteen, all more or less versed in engineering work, and of whom appellee's intestate was one. All of the men were in the employ of Blair, and their place of business was at the construction job site. Charlton was employed by the month or week, and his crewmen by the day. Charlton had direct supervision over his crewmen, and hired and discharged them at will. He hired plaintiff's intestate, and wired him to report to work. Charlton was responsible to Blair for the proper performance of the duties of his crew. It was the duty of Charlton and his crew to make surveys and lay out the work to be performed by others who did the actual construction work. The work of Charlton and his crew was an integral part of

the construction job, and any delay in their work would, according to the time and amount of the delay, retard the actual construction. The construction site covered a large area, and Charlton and his crew were compelled to go from place to place in this area in the performance of their duties. For the efficient performance of such duties, Blair furnished to Charlton an automobile or station wagon to be used by him in transporting his crew, their tools, instruments and equipment from place to place in the construction area. Charlton lived in Autauga County, some twenty or twenty-five miles from the construction site. The members of his crew lived at various points in the city of Montgomery and its suburbs, some of them five and six miles from the construction site. There was no street railway, bus line, or other public conveyance from the city of Montgomery to the construction site. Charlton, with Blair's knowledge and consent, regularly used the station wagon to transport himself to his home in the afternoon and to his work at the job site in the morning. Charlton, likewise with Blair's knowledge and consent, regularly transported some of the members of the crew to their homes, or to a designated meeting point near their homes in the afternoon, and carried them from the same place to their work at the construction site in the morning. In thus transporting members of his crew, Charlton was compelled to detour several miles from the direct route to and from his (Charlton's) home. No cash consideration was paid for such transportation, and it was no part of their contract, express or implied, so as to create any obligation, that the members of Charlton's crew should be thus transported. It was voluntary or optional with them as to whether or not they rode in the station wagon. Charlton could have declined to carry them, and they could have refused to ride had they so wished.

Plaintiff's intestate was injured in the afternoon after working hours, and some five or six miles from the job site, and while being transported in the station wagon by Charlton to plaintiff's intestate's home, or agreed meeting place. There was no evidence tending to establish willful or wanton misconduct on the part of either defendant in the court below.

We will first determine whether the case against appellant Blair is governed by the Alabama Workmen's Compensation Law.

Subdivision (j) of section 262, Title 26, Code of 1940, provides: "Without otherwise affecting either the meaning or interpretation of the abridged clause, injuries by an accident arising out of and in the course of his employment, it is hereby declared: Not to cover workmen except while engaged in, on or about the premises where their services are being performed, or where their services require their presence as a part of such service at the time of the accident, and during the hours of service as such workmen, and shall not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him, and not directed against him. as an employee, or because of his employment, and it shall not include a disease unless the disease results proximately from the accident."

The term "premises" of the employer, used in subsection (j), supra, has reference to premises at or near which the service is to be rendered. Sloss-Sheffield Steel & Iron Co. v. Thomas, 220 Ala. 686, 127 So. 165.

Clear enough Greene was not at or near the premises of Blair when injured. As to whether or not Greene was where his service required his presence as a part of such service at the time of the accident, and during the hours of service as a workman, within the meaning of subsection (j), supra, depends upon the effect to be accorded his transportation to and from work in the station wagon. If by contract, express or implied, the transportation constituted a part of the consideration paid or to be paid Greene for his services, then, in that event, the mutual duties of employer and employee were being performed at the time Greene was injured, and his claim for such injuries is governed by the Workmen's Compensation Law. If, on the other hand, the transportation did not constitute a part of his contract of employment, the Workmen's Compensation Law has no application. Jett v. Turner, 215 Ala. 352, 110 So. 702; Ex parte Taylor, 213 Ala. 282, 104 So. 527.

Blair was under no obligation whatever to transport Greene to or from work. Greene was under no obligation to accept such transportation. Blair could have refused to carry him and Greene could have refused to ride.

In Stevens v. Allamuchy Tp., 36 A.2d 128, 130, 22 N.J.Misc. 106, the Supreme

Court of New Jersey said: "In considering and determining the issue here involved, we must bear in mind certain settled and basic principles: 1. A necessary prerequisite for recovery under the Workmen's Compensation Act is the existence of the relation of employer-employee. Corbett v. Starrett Bros., Inc., Err. & App., 105 N.J.L. 228, 143 A. 352; Rojeski v. Pennington Dairy Farms, Inc., 118 N.J.L. 335, 192 A. 746. 2. In order for that relation to exist, there must be a valid contract of service together with the right or power in the employer to control the employee with respect to the transaction out of which the injury arose. Essbee Amusement Corporation v. Greenhaus, 114 N.J.L. 492, 493, 177 A. 562; Rojeski v. Pennington Dairy Farms, Inc., supra, 118 N.J.L. at page 337, 192 A. at page 748."

, In 71 Corpus Juris 722, section 446, it is said: "Where the employee is injured while riding to or from work in a conveyance provided by the employer, 'the employer's liability * * * depends upon whether the conveyance has been provided by him, after the real beginning of the employment, in compliance with one of the implied or express terms of the contract of employment, for the mere use of the employees, and is one which the employees are required, or as a matter of right are permitted, to use by virtue of that contract.' "

The undisputed evidence denies any contractual obligation under the employment of Greene to furnish him the station wagon in question as a means of transportation to and from his work, and the Workmen's Compensation Law does not govern or control the claim for damages on account of his death.

Was Greene a passenger for hire at the time he was injured, or was he a guest under the laws of this State at that time.

Section 95, Title 36, Code of 1940, provides: "The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."

█ The situation that this statute was apparently designed to prevent is well known. As the use of automobiles became almost universal, many cases arose where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly the legislature in adopting this act reflected a certain natural feeling as to the injustice of such a situation. The terms of the statute should be construed with their intent and purpose in view, and the purpose and object that the legislature had in mind sometimes throws light upon the meaning of the language used.

In the particular here involved, our statute seems not to have been construed by this Court. In construing such statutes consideration should not only be given to the meaning of the language "transported without payment therefor," or its equivalent in other statutes, but also to the meaning of the word "guest" as used in such statutes. Humphreys v. San Francisco Area Council, etc., Cal.App., 129 P.2d 118; Haney v. Takakura, 2 Cal.App.2d 1, 7, 37 P.2d 170, 38 P.2d 160; Scholz v. Leuer, 7 Wash.2d 76, 109 P.2d 294, 299; Peronto v. Cootware, 281 Mich. 664, 275 N.W. 724; Russell v. Parlee, 115 Conn. 687, 163 A. 404, 406; Rocha v. Hulen, 6 Cal.App.2d 245, 44 P.2d 478; Knutson v. Lurie, 217 Iowa 192, 251 N.W. 147; Smith v. Clute, 277 N.Y. 407, 14 N.E.2d 455.

In McCann v. Hoffman, 9 Cal.2d 279, 70 P.2d 909, 913, it is said: "But it (compensation) is not given where the main purpose of the trip is a joint pleasure of the participants," etc. * * * "On the other hand, following the precepts and rules of construction herein noted, the cases indicate, either by a direct holding or by recognition, that where the relationship between the parties is one of business and the transportation is supplied in the pursuit thereof for their mutual benefit, compensation has been given and the plaintiff is a passenger and not a guest." Citing numerous authorities.

In Vol. 4 Blashfield, Cyclopedia of Automobile Law and Practice, page 80, § 2292, the rule is summed up as follows: "One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospi-

tality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operates for their common benefit or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments."

In the Humphreys case, supra [129 P.2d 119]:

"To take a person riding in an automobile out of the 'guest' status, it is not necessary that compensation for the ride be a strict contractual consideration or that an enforceable contract relation relative to the ride should exist between the parties."

"If the excursion is not purely social, any benefit to the driver of the automobile conferred or anticipated or mutual benefit present or anticipated to the driver and the person carried is sufficient to take the case out of the automobile guest statute."

"If an employer, as a regular practice, affords transportation to its employees to and from the nearest town and maintains an automobile in part for that purpose, an employee riding to such town on an errand of his own by virtue of the privilege is not within the automobile guest law, although the transportation is a mere revocable privilege."

In Thomas v. Currier Lumber Co., 283 Mich. 134, 277 N.W. 857, the court said: "A guest need not make cash payment for his transportation to be a 'guest paying for his transportation' so as to be entitled under the statute to recover from motorist for injury sustained in accident without proof of gross negligence or willful and wanton conduct, but it is sufficient if a benefit accrues by reason of the transportation." See, also, Bree v. Lamb, 120 Conn. 1, 178 A. 919.

In Kruy v. Smith, 108 Conn. 628, 144 A. 304, 305, it was said: "The Legislature, when it used the word 'guest,' did not intend to include persons who are being transported for the mutual benefit of both the passenger and the operator or the owner of the car, and, in determining whether the transportation was for the mutual benefit of both, not merely the act of transportation must be considered, but also any contract or relationship between the parties to which it was an incident."

There is nothing in the evidence to indicate that the transportation of Greene was motivated by any influence other than the mutual benefit to the parties, and Greene was therefore not a guest under the statute, but was a passenger for hire at the time of his injury and death.

But appellants earnestly insist that if Greene was not a guest, he was of necessity an employee and governed by the Workmen's Compensation Law. In other words, that the very facts and circumstances which prevented Greene from being a guest made him an employee at the time of his injury.

We are concerned here, not with a relationship growing out of the contract of employment, but with the construction of a statute denying to a certain class of passengers in an automobile a right to recover compensation for injuries resulting from negligence in its operation, to which, prior to its enactment, they were entitled. Its operation should not be extended beyond the correction of the evils and the attainment of the social objects which, it may be assumed, were the inducing reasons for its enactment. Russell v. Parlee, 115 Conn. 687, 163 A. 404, 406; Silver v. Silver, 280 U.S. 117, 122, 50 S.Ct. 57, 74 L.Ed. 221, 65 A.L.R. 939; Humphreys v. San Francisco Area Council, etc., supra, 129 P.2d 118. "It may well have appeared to the Legislature that there were sound social reasons for denying a recovery for negligence against one who was transporting in his automobile a member of his family or a social guest or casual invitee, in an action brought by the recipient of his hospitality, which would not exist where a mutual benefit growing out of the relationship of the parties was contemplated, even though the benefit to be received was incidental, and not a technical legal benefit which the parties by their conduct had bargained for as the consideration for the transportation." Russell v. Parlee, supra.

There is no dispute as to the ownership of the station wagon, nor that it was used in the business of Blair by Blair's employee, Charlton. The question upon this phase of the controversy is whether the employee driver was then and there engaged in the line and scope of his employment. Upon this point there is no categorical denial. The issue must be resolved upon the undisputed facts as outlined above. Where a master places at the disposal of his servant an automobile to be

used by the servant in going to and from his work, the transportation is beneficial to both, and the relation of master and servant continues while the automobile is used for such purpose. Dunbaden v. Castles Ice Cream Co., 103 N.J.L. 427, 135 A. 886; Auer v. Sinclair Refining Co., 103 N.J.L. 372, 137 A. 555, 54 A.L.R. 623; Ackerson v. Edwin M. Jennings Co., 107 Conn. 393, 140 A. 760, 56 A.L.R. 1127; Silent Automatic Sales Corporation v. Stayton, 8 Cir., 45 F.2d 471.

Under the undisputed facts Charlton was acting within the line and scope of his employment at the time Greene was injured. As we have pointed out above, Greene was not an employee at that time because his transportation was no part of his contract of employment. If Greene was being transported as the passenger of Blair, then, of necessity, Charlton was the agent of Blair in the accomplishment of that purpose. The fellow servant doctrine has no application here.

Appellants earnestly insist that the cause must be reversed and remanded because the trial court invaded the province of the jury in instructing it affirmatively, without being requested in writing to do so: that the deceased Greene, at the time of the accident, occupied the relation of a passenger in the station wagon; and that he was not subject to the Workmen's Compensation Law; and that if one defendant is liable, both of the defendants are liable. Either both are liable or neither one is liable..

The facts relative to these propositions were in nowise in dispute, but were established by the testimony of the witnesses both for the plaintiff and for the defendants. They were insisted upon by appellants as the true facts. This Court has held that under such circumstances the cause will not be reversed. Goff et al. v. Sellers, 215 Ala. 489, 111 So. 210; Schloss v. Inman, Smith & Co., 129 Ala. 424, 430, 30 So. 667, 669. Here there is no dispute as to the facts, and the result in nowise depends upon the credibility of oral testimony. Though the charges were improperly given in view of section 270, Title 7, Code of 1940, the error, if any, was without injury. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

We have carefully examined each written charge refused to appellants. Under our holding as to the law of the case, each charge was properly refused. Nor did the trial court commit error in overruling appellants' motion for a new trial.

We have carefully examined the record relative to the amount of the verdict and judgment, and are unable to affirm that it is excessive.

GARDNER, C. J., and STAKELY, J., concur in the foregoing opinion.

BROWN, FOSTER and SIMPSON, JJ., think the question of whether Greene at the time of the accident was a passenger in the station wagon or a gratuitous guest; and whether Charlton was acting in the line and scope of his employment on that occasion as the agent of Blair, were questions for the jury, and the court erred in charging the jury peremptorily on those matters. Hill v. Decatur Ice & Coal Co., 219 Ala. 380, 122 So. 338.

BROWN, J., also thinks that it was a question for the jury as to whether Greene was under the Workmen's Compensation Law on that occasion.

THOMAS, J., agrees with the dissenting opinion, except that he thinks the question of whether Charlton was acting in the line and scope of his employment was one for the jury. Hill v. Decatur Ice & Coal Co., supra.

Reversed and remanded.

THOMAS, BROWN, FOSTER, and SIMPSON, JJ., concur.

GARDNER, C. J., and LIVINGSTON and STAKELY, JJ., dissent.

BROWN, Justice (concurring in the reversal).

I concur with Mr. Justice LIVINGSTON in the interpretation of the guest statute, but am unable to agree with his interpretation of the evidence; hence this opinion.

Greene, the deceased, was an employe of defendant Blair who was engaged in the construction of a government project. Defendant Charlton was also an employe of Blair, in the capacity of civil engineer. Greene and others were under Charlton's direct superintendency. Charlton was entrusted by Blair with an automobile or station wagon, and on the occasion of the fatal injury of Greene, he was being car-

ried to his home from work in said automobile, driven by Charlton.

Plaintiff's theory was and is that her intestate was a passenger in the automobile, as distinguished from a "guest", within the purview of Section 95, Title 36 of the Code of 1940, and that at the time and on the occasion Charlton was acting within the line and scope of his employment by Blair.

Defendant's theory was and is that intestate's status was that of "guest", rather than passenger for hire; that Charlton was not at the time and on the occasion acting within the line and scope of his employment; and, further, that the claim for the injury and death of intestate was compensable, if at all, only under the Alabama Workmen's Compensation Law.

The trial court ex mero motu, without being "required" to do so by either of the parties, charged the jury on the effect of the evidence, (1) that intestate, at the time of the accident, occupied the relation of a passenger in the automobile; (2) that if one defendant was liable, both were liable,—that is, that Charlton was acting within the line and scope of his employment; and (3) that intestate was not subject to the Workmen's Compensation Law.

■ It is not to be questioned that the trial court in so charging the jury contravened the very terms of the statute, Code 1940, Tit. 7, § 270. I am unable to concur in the conclusion expressed in the opinion of LIVINGSTON, J., that this was error without injury. To do so, the entire evidence offered on the trial must be interpreted as being susceptible of a single inference. I do not so interpret it.

The evidence on the controverted issues consisted of the testimony of four witnesses, one for the plaintiff and three for the defendants. Three of these were fellow employes of intestate and passengers in the automobile at the time of the accident, and the other was the co-defendant Charlton. While there is no conflict in this testimony that the automobile was the property of Blair and furnished by Blair to Charlton; that Blair furnished gas and oil for its operation; that Charlton occupied a position of at least quasi-superintendency and had and exercised a general supervision over intestate and others in his crew; that Charlton used the automobile in transporting himself, his men and tools or instruments from place to place on the job, and also used it in traveling between his home—in an adjoining county—and his place of work, and made a practice of conveying intestate and others in his crew from the job to points at or near their respective homes—following a devious route or routes—on his travels going to and coming from his place of work and his home; and that it was on one of such trips that intestate was injured:—There was, on the other hand, undisputed evidence that his use of the automobile for purposes other than those involving his work on the job was without any direct authority on the part of his employer, Blair. The evidence as to this is simply that Blair knew that he used the automobile in traveling between his job and his home and made no objection thereto, and that perhaps Blair knew of his practiced use of the automobile in transporting members of his crew from their homes to the job and from the job to their homes, and that no objection was made as to this. There is also evidence that there was no agreement or understanding whatever between intestate and other crew members and Blair or Charlton or anyone else with respect to their transportation to and from the job; that such transportation was no part of their compensation, and that they paid no one anything for the service. While there are tendencies of evidence to the effect that it was in the interest of the employer, Blair, that his employes engaged in this construction job be afforded adequate means of transportation to and from their work; there are also tendencies of evidence to the effect that the transportation was largely, if not solely, in the interest and for the accommodation of such employes.

■ However persuasive may be either the one or the other of the inferences logically to be drawn from the whole evidence, neither can be said to be exclusive. Wherever this is so, the issue is one which must be submitted primarily to the jury. Hill v. Decatur Ice & Coal Co., 219 Ala. 380, 122 So. 338. While I am persuaded, on more thorough examination of the testimony in the case, that the issue of whether or not the Workmen's Compensation Law was applicable to plaintiff's claim could only be resolved in the negative, and that, therefore, the action of the trial court in withdrawing this issue from the jury could be sustained on the theory of error without injury, Stockham Pipe Fittings Co. v. Williams, 245 Ala. 570, 18

So.2d 93, I am of the opinion that the court's oral affirmative instructions on the other two issues, viz: the status of intestate as a passenger or a guest, and whether or not Charlton was acting within the line and scope of his employment in the matter of transporting intestate at the time and place, in such wise as to render his employer, Blair, liable, were issues which should have been submitted to the jury, and that the court's charge was invasive of the province of the jury. For this error the judgment is due to be reversed.

THOMAS, FOSTER, and SIMPSON, JJ., concur.