36 N.J. Super. 116 (1955)
114 A.2d 863
DOROTHY W. MAHONEY, PETITIONER-RESPONDENT,
v.
NITROFORM COMPANY, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1955.
Decided June 10, 1955.
*119 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Isidor Kalisch argued the cause for respondent-appellant.
Mr. Alexander Avidan argued the cause for petitioner-respondent (Messrs. Avidan & Avidan, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
This is a review of concurring conclusions of the Essex County Court and the Division of Workmen's Compensation awarding compensation to petitioner in respect to a fatal accident which befell her husband, Richard W. Mahoney, allegedly while in the employ of respondent corporation. There are mooted on this appeal issues as to the asserted employment relationship and with respect to the rate of compensation applicable. Our conclusions on the question first stated will be dispositive of this proceeding.
Petitioner's principal witness was Thomas J. Tully, whose regular occupation is as an associate professor of chemistry at the Newark College of Engineering. He and three others, including the decedent, were incorporators of respondent on June 26, 1952, and equal holders of its shares of stock. He was vice-president in charge of research, Mahoney was president, one Edwin C. Kraemer was secretary and treasurer, and Leon J. Ross was vice-president in charge of sales. At all times here material decedent was a full time, five-days-a-week working chemist in the employ of Merck & Co. at Rahway. Kraemer also had another regular full time employment. The record is silent as to Ross' activities in or out of the respondent company. From the time of incorporation until February 21, 1953 respondent manufactured chemicals at rented premises in Newark. Production was primarily by decedent, who devoted evenings and most of his week-ends and holidays to *120 the enterprise, allegedly averaging some 20 hours per week. Kraemer assisted Mahoney, presumably during similar periods, and also had charge of the records and general administration of the company. There was a caretaker and several other miscellaneous employees. On February 21, 1953 there was an explosion and fire at the plant and both Mahoney and Kraemer were fatally injured while at work. Respondent thereupon discontinued its operations.
Up to the time of the accident none of the four incorporators had drawn any money from the company, whether as salary, wages, dividends or otherwise. There was $1,087.73 in the bank and an unspecified amount of accounts receivable. The books and records were not available, having allegedly been destroyed in the fire or seized by the authorities investigating the explosion. Respondent's position is that none of the organizers, including decedent, was in an employment relationship with the company at the time of the accident, but that they were contributing their spare time efforts in developing its operations in the interest of their proprietorship of the business and in the hope that eventually they would all have full time employment in the operation of their own business. Petitioner says that it was understood between the incorporators that such work as was performed by any of the men was to be paid for on a reasonable basis, in the case of the decedent at the rate of his earnings at Merck, payable when the company should have sufficient funds available for the purpose, and that the company was able so to pay when the accident occurred. Before inspecting the testimonial support offered for this thesis in the Division it will be useful to consider the law.
The elective compensation provisions of the act arise out of the agreement, express or implied, between "employer and employee" to accept its scheduled rates of payment. R.S. 34:15-7. Under N.J.S.A. 34:15-36:
"`Employer' is declared to be synonymous with master, and includes natural persons, partnerships, and corporations; `employee' is synonymous with servant, and includes all natural persons who perform service for another for financial consideration, * * *."
*121 The requisite statutory relationship is non-existent unless it arises from a contract of hire, express or implied in fact, Bendler v. Bendler, 3 N.J. 161, 167 (1949); See Vogt v. Borough of Belmar, 14 N.J. 195, 206 (1954). It has long been considered that there is required a showing of a "valid contract of service." Rojeski v. Pennington Dairy Farms, Inc., 118 N.J.L. 335, 337 (Sup. Ct. 1937); Brower v. Township of Franklin, 119 N.J.L. 417 (Sup. Ct. 1938). While the "financial consideration" specified in the statute must flow between the parties sought to be implicated in the operative relationship, Hughes v. Dugan Bros., 128 N.J.L. 279, 280 (Sup. Ct. 1942), the fact that the precise basis of emolument has not been fixed at the time of the accident does not preclude the application of the statute if it is fairly determinable. Essbee Amusement Corp. v. Greenhaus, 114 N.J.L. 492, 494 (Sup. Ct. 1935). The rendition of service by one person to another at the latter's request, and under circumstances which negative the idea that it is gratuitous, entitles the person who renders the service to compensation therefor in the amount of its reasonable worth as a matter of agreement implied from the request to render it. Colloty v. Schuman, 76 N.J.L. 502, 504 (E. & A. 1908). The citation of the Colloty case, which was an action in contract, in the Essbee case, supra, a compensation suit, as well as the rationale of the Bendler decision, supra, wherein it was held that a husband could not be a compensable employee of his wife because of the common law interdiction of any contractual relationship between spouses, reinforces the concept expressed in the Rojeski and Brower decisions, supra, that it takes a valid contract of service to support the employment relationship requisite for invocation of the elective compensation schedules. A determinate inquiry in the matter sub judice, accordingly, is whether the proofs here arrayed by petitioner establish a valid agreement of hire between decedent and respondent as of the date of his death.
The agreement must not only be valid, but it must be one of hire, rather than an understanding founded in one of a number of other known service relationships which are distinguishable *122 from the concept of hire. Basic to a hiring, or employment, for example, is the element of control by the employer over the employee and the right to discharge him. There must be "dominion by the company over the decedent [compensation claimant] as an individual workman" and a "right of direction as to how his work should be done." Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 265 (1953). Those essentials are absent where the person rendering the service is an independent contractor. Id.; Toner v. International Association, etc., 113 N.J.L. 29, 31 (E. & A. 1934); Cappadonna v. Passaic Motors, Inc., 136 N.J.L. 299 (Sup. Ct. 1947), affirmed 137 N.J.L. 661 (E. & A. 1948). More significantly for present purposes, their lack is conspicuous when a purported corporate employee who is in fact an owner of the enterprise is responsible to and controlled by no one but himself. Larson, known as an exponent of the liberal viewpoint in workmen's compensation law, says, as to corporate executives:
"Moreover, the work, to qualify as employment, should be done under the control of someone. If the officer is himself the ultimate wielder of control, it is difficult to see how even his performance of menial work could be termed employment."
1 Larson, Workmen's Compensation Law (1952) § 54.21, p. 788.
Recovery of compensation was denied, partly upon the indicated philosophy, in Carville v. A.F. Bornot & Co., 288 Pa. 104, 135 A. 652, 655 (Sup. Ct. 1927); Korovilas v. Bon Ton Renovating Co., 219 Minn. 294, 17 N.W.2d 502, 504 (Sup. Ct. 1945); Manfield & Firman Co. v. Manfield, 95 Ind. App. 70, 182 N.E. 539, 541 (App. Ct. 1932); Bowne v. S.W. Bowne Co., 221 N.Y. 28, 116 N.E. 364, 366 (Ct. App. 1917); Leigh Aitchison, Inc., v. Industrial Commission, 188 Wis. 218, 205 N.W. 806, 807, 44 A.L.R. 1213 (Sup. Ct. 1925). In the case last cited, dealing with a manager-owner of a corporate business from which she drew a $5,000 annual salary, the court said:
*123 "Mrs. Aitchison fixed her own salary, * * * fixed her own hours of employment, prescribed her own duties, was responsible to no one; no one had the power or authority to discharge her and she was subject to no one's direction. It would seem to require no argument to show that under those circumstances she was not an employee in the sense in which that term is used in the Workmen's Compensation Act. * * *" (At page 807 of 205 N.W.)
In New Jersey, as almost everywhere, an interest in a corporate business is not of itself a disqualification of the owner's potential status as an employee, present the required indicia of the relationship. Adam Black & Sons, Inc., v. Court of Common Pleas, 8 N.J. Misc. 442 (Sup. Ct. 1930) (part owner drawing wage of $60 weekly); Strang v. Strang Electric Co., 8 N.J. Misc. 873 (Sup. Ct. 1930) (stockholder, treasurer, on salary of $35 weekly); Goldmann v. Johanna Farms, Inc., 26 N.J. Super. 550 (Cty. Ct. 1953) (part owner, manager); see Hannaford v. Central R. Co. of New Jersey, 115 N.J.L. 573, 576 (Sup. Ct. 1935). There is an implication of the significance of control in the case last cited, but no consideration of that factor in the others. The contrariety of viewpoint in respect to the general matter of proprietorship or executive status is reflected in Annotations, 15 A.L.R. 1288, 81 A.L.R. 644.
Against this projection of the legal spectrum here applicable we proceed to scrutinize the supporting proofs. They are, to say the least, of dubious quality and weight. There were no corporate minutes, no resolutions, nor any other written record of any pecuniary obligation of the respondent to the decedent or to the other entrepreneurs. There was, Tully said, a "gentlemen's agreement" between the incorporators. This took place "just a short time before the accident," though Mahoney had been producing chemicals since June of 1952. "At that time we had a verbal understanding with Mr. Mahoney that he would be paid a reasonable wage for his services, * * * to be based upon" his Merck earnings. "We had all agreed not to draw any salary until we had a considerable amount of money in the corporation treasury, and then we would be paid * * * for what we had done for the corporation when the corporation had money *124 to pay for these services." It is impossible to tell from this whether the witness meant that the alleged agreement for retroactive compensation was made when the business began or "shortly before the accident." The story seems to be that the pay for back services would not be made until the men went on a full time salary status. The witness said he told Mahoney that if the latter went on a full time basis with respondent he "would get as much as he was getting at Merck's" and that "I also felt that he should be reimbursed for his services up to that time too." When asked by the deputy director what formula would be used for fixing the compensation, Tully said: "The feeling was that we would be paid for what might be considered as a reasonable rate, based on what we were getting in our other positions." The witness volunteered the observation that there was sufficient money on hand to pay the alleged earnings due, when he heard counsel make a statement in colloquy to the contrary. As noted, however, there was only some $1,100 on hand when the accident occurred and payment of Mahoney and Kraemer at the compensation rate of their regular jobs (assuming for Kraemer a rate of $2 per hour) for the work done since June 1952 would have required some $2,500. It will be recalled that allegedly the men were not to be reimbursed until there was a "considerable amount" in the treasury. These observations bear not so much on the existence of the employment status as on Tully's credibility and as reflecting his eagerness to establish a case for the family of his deceased associate.
Tully acknowledged signing a written statement for an insurance company representative, dated three weeks after the accident, to the following effect:
"As far as salary was concerned it was agreed that no one was to receive a salary till such a time that the company was making enough money to pay us what we are making at the present time in our jobs. Mr. Mahoney and Mr. Kraemer were to go into the company first, because they were the production end and administration end of the company. We hoped the company would be in a position to pay salaries some time this year. Up to this time none *125 of the four officers received any compensation either salary, dividend or anything else. * * * So far as I know there were no personnel or payroll records kept."
When confronted with this statement Tully said it was accurate so far as it went but was ambiguous and incorrect in inferring that there was to be no payment for previous work. As we read the statement, however, it is instinct with the affirmation that the men had no pecuniary claims against the respondent at any time but only a hope that by their voluntary efforts the company would prosper sufficiently to give them full time jobs eventually.
We find Tully's testimony vague, inconsistent, unconvincing and biased. It strikes us as a labored but transparent attempt to fabricate a basis for recovery. Even were it deemed to be honest, it is difficult to discern from it whether the understanding was personal to Tully and Mahoney, or whether it was a tentative plan later to be made definite. If tangible at all, it would appear to have been an agreement between incorporators, inter sese, rather than between the corporate entity and the individuals. The burden of establishing all of the statutory requirements rests upon the petitioner in compensation. Bryant v. Fissell, 84 N.J.L. 72 (Sup. Ct. 1913); Ten Eleven Corp. v. Brunner, 135 N.J.L. 558 (Sup. Ct. 1947); Fusco v. Cambridge Piece Dyeing Corp., 135 N.J.L. 160 (E. & A. 1947). The avowed principle of liberal construction of the workmen's compensation act may not properly be invoked to justify tolerant acceptance of contradictory, uncertain and unconvincing proofs as a discharge of a petitioner's burden of proof in a compensation case. Grotsky v. Charles Grotsky, Inc., 121 N.J.L. 461, 465 (Sup. Ct. 1938), affirmed 124 N.J.L. 572 (E. & A. 1940). The burden as to facts is the same as that of the proponent in any civil litigation. While concurring findings of fact by the compensation division and the County Court are entitled to "determinate weight," yet it is the duty of this court to reverse "when we are satisfied the finding is not supported by sufficient evidence." Jensen v. Wilhelms Construction Co., 18 N.J. Super. 372, 375, 376 *126 (App. Div. 1952). We are justified in rejecting testimony, "even though not directly contradicted, when it is contrary to circumstances given in evidence or contains inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence excite suspicion as to its truth." In re Perrone's Estate, 5 N.J. 514, 521, 522 (1950). In the present case there was no available witness with whom Tully's story could be checked. (Ross was represented by petitioner's counsel to be out of the country.) As to the contention that respondent's answer to the petition admitted employment, that concession was withdrawn, by consent of the deputy director, at the commencement of the hearing. While this did not destroy the evidential character of the answer as an admission, cf. New Amsterdam Casualty Co. v. Popovich, 18 N.J. 218, 224 (1955), it carries little weight in view of the nature of the affirmative proofs bearing on the issue of employment. We find Tully's version of an agreement by respondent to pay the decedent for the services rendered prior to his death not to be satisfactorily established in fact. Not only is its direct testimonial basis of dubious substance, but it is totally uncorroborated by other normally expectable documentary proof or as a matter of inherent likelihood in the surrounding circumstances.
We cannot properly imply an agreement to pay the fair value of the alleged services on quantum meruit, first, because the purported claim is on an express agreement, C.B. Snyder Realty Co. v. National Newark & Essex Banking Co., 14 N.J. 146, 162 (1953), and second, because the circumstances negative the idea of direct remuneration. 1 Larson, op. cit., supra, § 47.41, p. 696; § 47.41(c), p. 698; Colloty v. Schuman, supra.
It would, however, not help petitioner if Tully's story were held credible. We may pass the point that the alleged agreement was attended by conditions not met. It is not shown that the company had sufficient funds above necessary working capital at any time to pay Mahoney (and, necessarily, Kraemer) for past services. (See discussion, supra). Quaere, whether an employment is for "a financial consideration" *127 where payment is contingent upon an event which may never occur and had not occurred when the accident transpired? Of more patent substance is the consideration that this was not a valid agreement of hire, both because not sufficiently definite as to terms (apart from compensation) and because the alleged "employee" was entirely free from control or direction. We have already referred to the authorities bearing upon each of these requisites.
The evidence here furnishes no clue whatever as to any undertaking by Mahoney to do any particular kind of work at any fixed or determinable times or hours. There was testimony that he performed certain chemical operations, averaging 20 hours a week, usually weekends, holidays, or evenings. But the proof fell short of establishing that, as of the date of the accident or as of any other time, decedent undertook with respondent to render, or that respondent had any consensual right to expect from him, any particular kind or quantum of service. We think it fair to conclude from what was adduced that decedent was free to come and go when he chose and to render such service as might be convenient for him at his indeterminate volition. "To be enforceable * * * a contract must be sufficiently definite in its terms that the performances to be rendered by each party can be reasonably ascertained." Savarese v. Pyrene Manufacturing Co., 9 N.J. 595, 599 (1952); Tumarkin v. Goldstein, 33 N.J. Super. 46, 50 (App. Div. 1954); Cooper v. Kensil, 31 N.J. Super. 87, 94, 95 (Ch. Div. 1954). We conclude the alleged understanding here advanced was not a valid agreement between the parties in any sense. Moreover, the essential element of control was missing. There is no evidence that Mahoney was subject to the direction or control of any one. He was indeed an autonomous member of what was in effect a joint venture, identified as a corporation by nothing more than a bare form of organization.
In fine, we conclude there was presented no factual or legal basis for the determination by the lower tribunals that decedent and respondent were in an employment relationship, within the fair contemplation of the act, on the date of the *128 accident. So finding, we need not discuss the issues relating to determination of the rate of compensation payable.
Reversed, but without costs.